**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MERCY HEALTH – REGIONAL MEDICAL CENTER D/B/A MERCY HEALTH – LORAIN HOSPITAL, 3700 Kolbe Road Lorain, OH  44053 | : : : : : | CASE NO.: JUDGE |
| | : | |
| MERCY HEALTH LORAIN LLC, 3700 Kolbe Road Lorain, OH  44053 | : : : : | **VERIFIED COMPLAINT** **TEMPORARY RESTRAINING ORDER PRELIMINARY INJUNCTION** |
| GIL PALMER, M.D., 3700 Kolbe Road Lorain, OH  44053 | : : : : | ***(Jury demand endorsed hereon)*** |
| ALOK JAIN, M.D., 3700 Kolbe Road Lorain, OH  44053, | : : : : : | |
| Plaintiffs, | : | |
| v. | : : | |
| CITY OF LORAIN, 200 W. Erie Ave Lorain, OH 44052 | : : : : | |
| JAMES P. McCANN, *individual capacity*, 47455 Middle Ridge Rd. Amherst, OH 44001 | : : : : : | |
| S/O 6328 Oak Tree Dr. S. Lorain, OH 44053 | : : : : | |
| PATRICK RILEY, *individual capacity*, 3817 Brendan Ln North Olmsted, OH 44070 | : : : : | |

1

S/O 200 W. Erie Avenue, 3rd Floor  :
  Lorain, OH 44052  :
    :
JOSEPH LAVECK, *individual capacity,*  :
2501 Seton Dr.  :
Avon, OH 44011  :
    :
JOHN DOES 1-5, *individual capacity,*  :
    :
J.D. TOMLINSON, *individual capacity,*  :
6623 Rosedale Dr.  :
Amherst, OH 44001  :
    :
MATTHEW KERN, *individual capacity*,  :
33182 Fairport Dr.  :
Avon Lake, OH 44012  :
    :
LORAIN COUNTY BOARD OF  :
COMMISSIONERS,  :
226 Middle Ave, 4th Floor  :
Elyria, OH 44035  :
    :
           Defendants.  :

Now come Plaintiffs, Mercy Health – Regional Medical Center d/b/a Mercy Health – Lorain Hospital, Mercy Health Lorain LLC, Gil Palmer, M.D., and Alok Jain, M.D. (collectively "Plaintiffs" or "Mercy Health"), by and through counsel, Reminger Co., LPA, and for their Complaint against Defendants City of Lorain, James P. McCann, Patrick Riley, Joseph Laveck, Lorain County Board of Commissioners, J.D. Tomlinson, Matthew Kern, and John Does 1-5.

## **INTRODUCTION**

1.    This action arises from the discriminatory, retaliatory and constitutionally repugnant campaign enacted by Defendants against the community's medical care providers, medical institutions, and religious bodies. The discriminatory conduct arises from Plaintiffs' collective and justified refusal to conduct what undeniably would have amounted to a medical

2

battery which carried a high likelihood of serious bodily injury or death to Patient[1], a non-party. Defendants are actively attempting to imprison doctors, persecute medical providers based upon their religious beliefs and affiliations, and strip religious medical institutions of police protection in retaliation. Plaintiffs pray for immediate intervention and injunctive relief from this Honorable Court, monetary damages, punitive damages, and any other relief which is justified under the law. Plaintiffs incorporate by reference the Motion for Temporary Restraining Order and Preliminary Injunction, and all facts and exhibits therein.

## JURISDICTION AND VENUE

2.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiffs allege claims under 42 U.S.C. § 1983 and for violations of its rights under color of state law under the First and Fourteenth Amendments of the United States Constitution.

3.      This Court has personal jurisdiction over Defendants. Upon information and belief all Defendants reside, or are incorporated in, Lorain County, Ohio and Cuyahoga County, Ohio. Defendant Board of Commissioners operates in Lorain County, Ohio. Defendant City of Lorain is incorporated in Lorain County under the laws of the State of Ohio. All pertinent acts in this case took place in Lorain County, Ohio. Both Lorain County, Ohio, and the City of Lorain, Ohio, are located within the Northern District of Ohio, Eastern Division.

4.      This Court has supplemental jurisdiction over Plaintiffs' state law claims arising under the Ohio constitution and Ohio statutes pursuant to 28 U.S.C. § 1367.

5.      Venue is proper in this Court under 28 U.S.C. § 1391 (b) and (c) and Rule 3.8 of the Local rules of the Northern District of Ohio, Eastern Division because a substantial part of the

---

1. The description "Patient" is being used in lieu of the patient's full name. Patient's full name and identity is well-known to all Plaintiffs and Defendants in this action, but is substituted to protect Plaintiff's personal information in accordance with privacy protection laws including HIPAA.

events or omissions giving rise to the claims herein occurred in the Eastern Division and because, upon information and belief, all defendants reside in the Eastern Division.

## THE PARTIES

6.     Plaintiff Mercy Health – Regional Medical Center d/b/a Mercy Health – Lorain Hospital, is a 338-bed non-profit, full-service hospital, providing inpatient, outpatient, and ancillary services. The hospital is located in the City of Lorain, in Lorain County, Ohio.

7.     Plaintiff Mercy Health Lorain LLC, is the sole member of Mercy Health – Lorain Hospital, as well as Mercy Health –Allen Hospital, which is also located in Lorain County, Ohio. Mercy Health Lorain is a wholly owned subsidiary of Bon Secours Mercy Health, Inc. ("BSMH") and the BSMH health care system, which is a ministry of the Catholic Church and sponsored by a Public Juridic Person of the Catholic Church.

8.     Plaintiff Gil Palmer, M.D., is a physician licensed to practice medicine in the State of Ohio, board-certified by the American Board of Family Medicine and the American Board of Physician Specialties — Emergency Medicine, and the President of Mercy Health – Lorain Hospital.

9.     Plaintiff Alok K. Jain, M.D., is a physician licensed to practice medicine in the State of Ohio, board-certified by the American Board of Internal Medicine (Internal Medicine, Gastroenterology), and practices medicine as a Gastroenterologist.

10.     Defendant City of Lorain is a municipal corporation formed and incorporated under the laws of the State of Ohio. The City of Lorain Police department is a sub-unit of Defendant City of Lorain which fulfills policing functions.

11.     Defendant James P. McCann is Chief of the Lorain Police Department, which is a sub-unit of Defendant City of Lorain.

4

12.     Defendant Patrick Riley is the law director for Defendant City of Lorain.

13.     Defendant Joseph LaVeck is the Assistant Law Director and Police Legal Advisor of Defendant City of Lorain.

14.     John Does 1-5 are the police officers who were each individually at Plaintiff Mercy Health – Lorain Hospital's medical institution between August 10, 2024, and August 13, 2024.

15.     At all times relevant to the claims herein, Defendant J.D. Tomlinson was the Prosecutor of Lorain County.  Upon information and belief, Defendant Tomlinson actively advised Defendants City of Lorain, McCann, LaVeck, and Riley to engage in retaliatory, discriminatory, illegal, and unconstitutional acts against Plaintiffs. Such acts are outside of the scope of authority of County Prosecutors.

16.     Defendant Matthew Kern is an assistant prosecutor in Lorain County. Defendant Kern actively advised Defendants City of Lorain, McCann, LaVeck, and Riley to engage in retaliatory, discriminatory, illegal, and unconstitutional acts against Plaintiffs. Such acts are outside of the scope of authority of County Prosecutors. Both direct and circumstantial evidence show Kern is the architect of extra-judicial retaliation against Plaintiffs.

17.     Defendant Lorain County Board of Commissioners is a juridical entity subject to suit under Ohio law for the acts of its agents, including Defendants Kern and Riley.

### Mercy Health — A ministry of the Catholic Church

18.     Plaintiff Mercy Health — Lorain Hospital operates as part of the ministry of the Catholic Church. Pursuant to that ministry, all medical providers and medical staff are required to abide by the *Ethical and Religious Directives for Catholic Health Care Services, 6th Edition,* promulgated by the National Conference of Catholic Bishops as interpreted by the Diocese of Cleveland. ("*Ethical and Religious Directives*")

19.     The purpose of these *Ethical and Religious Directives* is twofold: first, to reaffirm the ethical standards of behavior in health care that flow from the Church's teaching about the dignity of the human person; second, to provide authoritative guidance on certain moral issues that face Catholic health care today.

20.     The *Ethical and Religious Directives* include, *inter alia*, the following directives on Catholic Health Services, which include all Plaintiffs in this action:

> a.  In accord with its mission, Catholic health care should distinguish itself by service to and advocacy for those people whose social condition puts them at the margins of our society and makes them particularly vulnerable to discrimination: the poor; the uninsured and the underinsured; children and the unborn; single parents; the elderly; those with incurable diseases and chemical dependencies; racial minorities; immigrants and refugees. In particular, the person with mental or physical disabilities, regardless of the cause or severity, must be treated as a unique person of incomparable worth, with the same right to life and to adequate health care as all other persons. *Directive* No. 3.

> b.  Employees of a Catholic health care institution must respect and uphold the religious mission of the institution and adhere to these Directives. They should maintain professional standards and promote the institution's commitment to human dignity and the common good. *Directive* No. 9.

> c.  All persons served by Catholic health care have the right and duty to protect and preserve their bodily and functional integrity. The functional integrity of the person may be sacrificed to maintain the health or life of the person when no other morally permissible means is available. *Directive* No. 29.

> d.  While every person is obliged to use ordinary means to preserve his or her health, **no person should be obliged to submit to a health care procedure that the person has judged, with a free and informed conscience, not to provide a reasonable hope of benefit without imposing excessive risks and burdens on the patient or excessive expense to family or community**. *Directive* No. 32 (emphasis added).

21.     The *Ethical and Religious Directives* also set forth the following requirements on health care providers and institutions:

a. First, Catholic health care ministry is rooted in a commitment to promote and defend human dignity; this is the foundation of its concern to respect the sacredness of every human life from the moment of conception until death. The first right of the human person, the right to life, entails a right to the means for the proper development of life, such as adequate health care.

b. Within a pluralistic society, Catholic health care services will encounter requests for medical procedures contrary to the moral teachings of the Church. Catholic health care does not offend the rights of individual conscience by refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church.

c. A person in need of health care and the professional health care provider who accepts that person as a patient enter into a relationship that requires, among other things, mutual respect, trust, honesty, and appropriate confidentiality.

d. When the health care professional and the patient use institutional Catholic health care, they also accept its public commitment to the Church's understanding of and witness to the dignity of the human person. The Church's moral teaching on health care nurtures a truly interpersonal professional-patient relationship. This professional-patient relationship is never separated, then, from the Catholic identity of the health care institution. The faith that inspires Catholic health care guides medical decisions in ways that fully respect the dignity of the person and the relationship with the health care professional.

22. Plaintiffs all subscribe to and follow the above directives.

## FACTS COMMON TO ALL COUNTS

23. On the evening of August 10, 2024, the Lorain Police Department ("LPD") arrived at Plaintiff Mercy Health – Lorain Hospital's emergency department with a detainee, non-party Patient.

24. LPD police officers requested Hospital physicians to both medically clear and perform a body cavity search to remove a foreign object from Patient. The foreign object was described as a baggy partially sticking out of Patient's rectum at the time of their arrest that LPD suspected contained drugs. A search warrant was also provided to the Mercy Health – Lorain Hospital emergency department staff at that time, which directed LPD, Lorain Correctional, or any

authorized medical personnel acting as an authorized agent of the LPD to perform a body cavity search on Patient, to remove any foreign objects. The warrant commanded only public enforcement agencies to conduct the search.

25.     Staff of Mercy Health – Lorain Hospital, a private health care and religious institution, conducted a CT scan to first identify whether there was indeed a foreign object concealed in Patient's rectum. Patient consented to the CT scan where it was confirmed that there was some type of matter within the bowel. The clinician reading the scan was unable to discern what the matter was, stating that it could be a foreign object or stool. Notably, Patient had a bowel movement following the CT scan and no foreign objects were identified in his stool. No foreign objects were ever recovered. Patient refused any further medical imaging.

26.     During their admission at Plaintiff Mercy Health – Lorain Hospital, Patient refused to undergo a manual rectal exam. Plaintiffs also refused to perform the manual rectal exam portion of the body cavity search, because – crucially – all medical practitioners who opined on the subject matter determined there was an unjustifiably high risk of serious bodily injury or death if a manual rectal cavity search was performed.

27.     The medical doctors at Plaintiff Mercy Health – Lorain Hospital opined that if a baggy containing drugs was in Patient's rectum, the baggy would have a high risk of perforating during a manual removal. Because rectal tissue has a high rate of absorption, such a perforation has a high likelihood of being fatal. That high risk of bodily injury or death in the performance of a prospective body cavity search forms a substantial basis for Plaintiffs' acts and omissions relevant to this claim.

28.     On August 12, 2024, an LPD police officer returned to Plaintiff Mercy Health – Lorain Hospital with a search warrant specifically directed at: Plaintiff Mercy Health Lorain,

Plaintiff Dr. Gil Palmer, Dr. Bledar Kovaci, and Plaintiff Dr. Jain, and any other doctor in the Hospital's emergency department or medical facility and Mercy Health Lorain, demanding that the cavity search and foreign body removal was performed. Importantly, the "order" in the warrant to conduct the search was not made with input from a medical provider.

29.     Defendant City of Lorain's Chief of Police, Defendant McCann, threatened Plaintiff Dr. Palmer with arrest for obstruction of justice if Plaintiffs did not comply with the warrant.

30.     On the night of August 12, 2024, Plaintiff Dr. Palmer went home from Mercy Health – Lorain Hospital at the end of the business day. Once at home, he received a phone call from Defendant McCann who ordered his presence at the hospital or to face charges of obstruction of justice.

31.     Defendant McCann stated he would personally arrest Plaintiff Dr. Palmer if Dr. Palmer did not conduct the medical procedure which would have constituted medical battery, and which carried an unjustifiably high risk of serious bodily injury or death.

32.     Due to the patent and unjustifiable danger of the procedure – and that alternative safer options existed, e.g., allowing for a bowel movement under observation or transferring Patient to a government health care facility – Plaintiffs continued to exercise their right to refuse to perform the cavity search under O.R.C. § 4743.10(D). That statute unequivocally allows medical practitioners and health care institutions to refuse to participate in any medical procedure which violates the practitioner's right of conscience — including religious objection, stating:

> A medical practitioner, health care institution, or health care payer shall not be civilly, criminally, or administratively liable for exercising the practitioner's, institution's, or payer's right of conscience by declining to participate in or pay for a particular health care service.

> * * *

A medical practitioner, health care institution, or health care payer shall not be discriminated against or suffer any other adverse action as a result of declining to participate in or pay for a particular health care service on the basis of conscience.

33.     Plaintiffs have explicit immunity from the civil, criminal, and administrative penalty under Ohio statute for the refusal to participate in a medical procedure; the statute further prohibits any discrimination or adverse action against the institution or providers for refusal to participate. Importantly, Plaintiffs are part of a ministry of the Catholic Church. All employees and medical providers at Mercy Health facilities are required to uphold the *Ethical and Religious Directives.*

34.     Following Plaintiffs' refusal to perform the manual rectal cavity search, on the evening of August 12, 2024, the LPD removed Patient from Mercy Health – Lorain Hospital and released them from police custody. Notably, the August 12, 2024, search warrant set forth a 3-day period for compliance, through August 15, 2024. The release of Patient by the LPD made any cavity search impossible to conduct. It further prevented the observed natural passing of any foreign substance.

### Contempt Proceeding

35.     On August 14, 2024, in an email correspondence with undersigned counsel, the assistant Lorain County prosecutor, Defendant Kern stated: "Frankly, it sounds like Lorain Police consider Mercy's actions refusing to comply with the court's orders as a form of obstructing official business under R.C. 2921.31. You should also know that they had similar problems with University Hospital in Elyria where they took a suspect for a blood draw last year – which is to say that the police are frustrated with hospitals refusing to comply with search warrants issued by judges. This situation from earlier this week does not exist in a vacuum in their mind."

10

36.     Notably, no adverse action was ever initiated against the secular health care institution which, by Defendants' own representations, engaged in "similar" conduct. And importantly, Defendants Kern and McCann have represented that this behavior is a pattern, which has occurred multiple times previous, and which they will pursue again in the future.

37.     On August 13, 2024, the State of Ohio, by way of the Lorain County Prosecutor's office, filed a criminal complaint against Plaintiffs for contempt under Ohio Rev. Code § 2705.02(A). The basis of the charge states Plaintiffs and its agents were required to perform the medical procedure with no power to refuse to perform the procedure for reasons including the medical standard of care, ethical objections, religious objections, and moral objections.

38.     That proceeding is active. To support its defenses, Plaintiffs subpoenaed LPD police chief, Defendant McCann's, personal cell phone records for the period relevant to its defenses. Defendant McCann moved to quash the subpoena.

39.     During the initial hearing of the Contempt proceeding, the state court instructed the parties to confer and attempt to agree upon a procedure for instances where the police bring a person to the Hospital seeking to compel Plaintiff Mercy Health – Lorain Hospital and/or its providers to perform a medical search of the patient.

40.     Following an exchange of proposals to avoid future conflict, Plaintiffs made clear that they could not agree to a proposal which compelled medical providers to perform procedures which they opine, in their professional medical opinion, are unjustifiably dangerous, breach the standard of care, or constitute medical battery.

41.     Plaintiffs further represented they could not agree to force medical providers to violate their personal and sincere beliefs and objections to performing such procedure on moral, ethical, or religious grounds.

11

42.    Plaintiffs further represented that as part of a Catholic ministry, they are subject to the *Ethical and Religious Directives*, which they cannot compromise or abandon.

**Termination of the Mercy Health Lorain Police Force**

43.    Mercy Health - Lorain Hospital's Police Department currently staffs nine police officers, a Chief of Police, and a supervisor of emergency management. Mercy Health - Lorain Hospital's Police Department also employees 2 full-time security officers and 4 PRN ("as needed") security officers. The Mercy Health Lorain Police force is composed of the nine privately commissioned employed police officers within the broader Mercy Health – Lorain Hospital's Police Department.

44.    The day following the meet and confer between Plaintiffs and Defendant Kern on November 12, 2024, Defendant McCann sent correspondence terminating the Mercy Health – Lorain Hospital Police Department, stating:

> On January 1, 2018, Lorain Police Chief Cel Rivera entered into an agreement with Mercy Health of Lorain to establish the Mercy Health Police Department at Lorain Mercy Regional Medical Center. Effective **January 1, 2025**, the agreement between the Lorain Mercy Health Police Department and the Lorain Police Department is hereby terminated. Effective January 1, 2025, no person may act in the capacity of a police officer at any Mercy Hospital Facility within the City of Lorain.

45.    The termination letter was sent without prior notice of any kind. Defendant James P. McCann's decision to strip dedicated and employed police presence from the 338-bed hospital comes, in part, at the direction of Assistant Law Director Joseph LaVeck, and/or Lorain County Assistant Prosecutor Matthew Kern.

46.    Upon information and belief, Defendants Tomlinson, Kern and/or LaVeck formulated a plan to retaliate against Plaintiffs for their assertion of various objections.

47.     Defendants Kern and Tomlinson went outside of the state judicial process to retaliate against Plaintiffs. Upon information and belief, Defendants Kern and Tomlinson met with Defendants LaVeck and Riley.  The result of that conference was a plan to instruct Defendant McCann to terminate the agreement which established the Mercy Health – Lorain Hospital Police Force.

48.     Defendants Kern, Tomlinson, LaVeck, and/or Riley all, directly or indirectly, instructed Defendant McCann to terminate the agreement which established the Mercy Health – Lorain Hospital Police Force.

49.     In response, Plaintiffs exhausted other avenues to address Defendant McCann's actions including petitioning the Mayor of Lorain, Jack W. Bradley, for intervention; these efforts proved futile.

50.     Mercy Health – Lorain Hospital Police Force is essential to the function of Mercy Health - Lorain Hospital. Unlike a mere security force, police are permitted to exercise arresting power, maintain superior training and certifications, and are more well equipped to keep the peace; their continuous onsite presence is a crucial element to the care provided at Mercy Health – Lorain Hospital.

51.     The announcement by Defendant McCann has thrust the safety and operation of the hospital into uncertainty. In the first instance, current Police Force members are immediately forced to seek alternative employment if they wish to retain their commission as a police officer.

52.     Police officers' commission requires they be employed in a statutory police force; if they are reclassified as armed security, it will result in immediate forfeiture of their police commission.

53.     Upon information and belief, all nine members of the police force are expected to seek alternative employment on January 1, 2025, if Mercy Health Lorain can no longer employ them as police officers.

54.     Upon information and belief, Plaintiffs Mercy Health Lorain and Mercy Health – Lorain Hospital will be forced to seek out security officers to fill the role of what would ultimately become Mercy Health Lorain's security department.

55.     The inability to maintain an adequate security force brings heightened risks to the hospital, its staff, providers, patients, and community. Initial efforts have proven that obtaining an adequate replacement in the time frame available is impractical.

56.     Mercy Health — Lorain Hospital will be without adequate police presence should the Mercy Health – Lorain Hospital Police Force be eliminated.

57.     Plaintiffs' attempt to find a solution has proved fruitless. Plaintiffs have reached out to multiple private security companies to provide services in the wake of the elimination of the Mercy Health Lorain Police Force. Those contractors provided bids which amount to 2.5x the total cost currently spent by Mercy Health on the Mercy Health – Lorain Hospital Police Department.

## COUNT ONE: 42 U.S.C. § 1983
### Deprivation of the Right to Free Exercise of Religion under the Color of Law
### First and Fourteenth Amendments of the United States Constitution

58.     Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

59.     By reason of the aforementioned acts, policies, practices, procedures, and/or customs, created, adopted, and enforced under color of state law, Defendants have deprived Plaintiffs of their right to freedom of speech in violation of the First Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States

14

Constitution and 42 U.S.C. § 1983.

60.     Plaintiff Mercy Health – Regional Medical Center d/b/a Mercy Health – Lorain Hospital and Plaintiff Mercy Health Lorain LLC, are ministries of the Catholic Church.

61.     Pursuant to that ministry, all medical providers, institutions, and medical staff are required to abide by the *Ethical and Religious Directives.*

62.     Plaintiff Mercy Health – Lorain Hospital is an entity organized and operated as a non-profit hospital under the laws of the State of Ohio.

63.     Plaintiff Palmer, M.D., in his professional and/or personal capacity, maintains deeply held religious convictions in accordance with the *Ethical and Religious Directives for Catholic Health Care Services* promulgated by the National Conference of Catholic Bishops as interpreted by the Diocese of Cleveland.

64.     Plaintiff Jain, M.D., in his professional and/or personal capacity, maintains deeply held religious convictions in accordance with the *Ethical and Religious Directives for Catholic Health Care Services* promulgated by the National Conference of Catholic Bishops as interpreted by the Diocese of Cleveland.

65.     The *Ethical and Religious Directives* include, *inter alia*, the following directives on Catholic Health Services, which include all Plaintiffs in this action:

> a.  In accord with its mission, Catholic health care should distinguish itself by service to and advocacy for those people whose social condition puts them at the margins of our society and makes them particularly vulnerable to discrimination: the poor; the uninsured and the underinsured; children and the unborn; single parents; the elderly; those with incurable diseases and chemical dependencies; racial minorities; immigrants and refugees. In particular, the person with mental or physical disabilities, regardless of the cause or severity, must be treated as a unique person of incomparable worth, with the same right to life and to adequate health care as all other persons. *Directive* No. 3.

15

b.  Employees of a Catholic health care institution must respect and uphold the religious mission of the institution and adhere to these Directives. They should maintain professional standards and promote the institution's commitment to human dignity and the common good. *Directive* No. 9.

c.  All persons served by Catholic health care have the right and duty to protect and preserve their bodily and functional integrity. The functional integrity of the person may be sacrificed to maintain the health or life of the person when no other morally permissible means is available. *Directive* No. 29.

d.  While every person is obliged to use ordinary means to preserve his or her health, **no person should be obliged to submit to a health care procedure that the person has judged, with a free and informed conscience, not to provide a reasonable hope of benefit without imposing excessive risks and burdens on the patient or excessive expense to family or community**. *Directive* No. 32 (emphasis added).

66.   The *Ethical and Religious Directives* also set forth the following requirements on health care providers and institutions:

e.  First, Catholic health care ministry is rooted in a commitment to promote and defend human dignity; this is the foundation of its concern to respect the sacredness of every human life from the moment of conception until death. The first right of the human person, the right to life, entails a right to the means for the proper development of life, such as adequate health care.

f.  Within a pluralistic society, Catholic health care services will encounter requests for medical procedures contrary to the moral teachings of the Church. Catholic health care does not offend the rights of individual conscience by refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church.

g.  A person in need of health care and the professional health care provider who accepts that person as a patient enter into a relationship that requires, among other things, mutual respect, trust, honesty, and appropriate confidentiality.

h.  When the health care professional and the patient use institutional Catholic health care, they also accept its public commitment to the Church's understanding of and witness to the dignity of the human person. The Church's moral teaching on health care nurtures a truly interpersonal professional-patient relationship. This professional-patient relationship is never separated, then, from the Catholic identity of the health care

16

institution. The faith that inspires Catholic health care guides medical decisions in ways that fully respect the dignity of the person and the relationship with the health care professional.

67.  Defendants attempted to force Plaintiffs to violate acts forbidden by Catholic faith in violation of the Free Exercise Clause of the United States Constitution.

68.  These constitutional violations center around Plaintiffs' justified refusal to perform a potentially fatal medical battery which fell beneath the medical standard of care, accepted medical ethics, and which violate the fundamental tenets of Catholic health care.

69.  That procedure violated Plaintiffs' deeply held religious beliefs which include, *inter alia*, (1) defending human dignity; (2) upholding the sanctity of life; (3) incorporating the Catholic identity into all aspects of the doctor-patient relationship; (4) refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Catholic Church; (5) allowing patients to object to medical services which the patient believes subject him to excessive risk; (6) the right and duty to protect and preserve their bodily and functional integrity; (7) advocating for those at the margins of our society; and (8) maintaining professional standards and promoting the Catholic Church's commitment to human dignity and the common good.

70.  All Plaintiffs in this case sincerely believe the proposed "search" violated these central tenets of the Catholic Identity in violation of the *Ethical and Religious Directives*.

71.  All medical providers who opined on the subject matter of this case agreed that performing a manual rectal cavity search against a resisting patient carried an unjustifiably high risk of perforating the suspected drug-filled baggy or the patient's bowels. The high absorption rate of rectal tissue substantially increases the risk of serious bodily injury or death if the suspected

baggy of drugs was perforated. Performing such a dangerous procedure without patient consent cannot be squared with the central mission of Catholic health care.

72.     Defendants substantially burdened and attempted to force Plaintiffs to abandon their faith by illegally prosecuting and persecuting them in the Ohio contempt proceeding and in the court of public opinion.

73.     Defendants substantially burdened and attempted to force Plaintiffs to abandon their faith by illegally eliminating the Mercy Health – Lorain Hospital Police Force and leaving Plaintiffs without necessary police protection.

74.     The purpose behind the decision to terminate the Mercy Health – Lorain Hospital Police Force was twofold: *first*, in retaliation for assertion of First Amendment and ethical objections to committing medical battery. *Second*, to intimidate and coerce Plaintiffs and other medical providers in the community to abandon their religion, ethics, and morals in future instances.

75.     To be compelled to perform procedures which render life valueless, and which relegates basic human dignity as obsolete, directly violates the Catholic faith. Compelling such a procedure coerces the Plaintiffs to violate their sincerely held religious beliefs in violation of the Free Exercise Clause.

76.     Defendants' actions were taken in bad faith and were arbitrary, capricious, willful and taken under color of and in violation of the color of controlling law and individually and collectively harmed Plaintiffs, for which they seek damages to be proven at trial.

77.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**COUNT TWO: Violation of Ohio's Free Exercise Clause**
**Article I, Section 7 of the Ohio Constitution**

78.     Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

79.     Article I, Section 7 of the Ohio Constitution provides broader protections than the First Amendment of the United States Constitution.

80.     In addition to the allegations set forth under the Free Exercise claim asserted under the First and Fourteenth amendments of the United States Constitution, which Plaintiffs expressly and specifically incorporate by reference herein, Defendants violated the Ohio Constitution through burdening Plaintiffs' religious rights without a compelling state interest or in the least restrictive means of furthering a government interest.

81.     Plaintiffs proposed at least two readily available and less restrictive alternatives: (1) upholding Patient's right to life, sanctity of life, and basic human dignity by allowing the "baggy" to pass naturally under medical and police observation. Importantly, this natural passing likely would have occurred during the 72-hour search window prescribed by the search warrant; or (2) transfer Patient to a secular or government operated medical facility, of which there are many, to perform the procedure.

82.     Instead, Defendants released Patient within the search window, and subsequently prosecuted, persecuted, retaliated, and discriminated against the sincerely held Catholic beliefs of Plaintiffs.

83.     If Defendants had a compelling state interest in the search, they would not have released Patient from police custody within the search warrant window.

84.     A safer alternative, i.e., use of medical imaging and allowing the substance to pass naturally, satisfied Plaintiffs' supposed obligation to perform a body cavity search under Ohio law.

Those less dangerous and readily available medical evaluations achieved the same goal with respect to any alleged government interest: retrieval of a foreign substance in Patient's rectum (if any).

85.     The Defendants have made clear that their actions in this case are both reactive and prospective; their statements, retaliation, and discrimination were designed to both punish Plaintiffs, and to coerce Plaintiffs to abandon their rights of conscience in the future.

86.      As a direct and proximate result of Defendants' violation of Ohio's Free Exercise Clause, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**COUNT THREE: 42 U.S.C. § 1983**
**Deprivation of the Right to Free Exercise of Religion under the Color of Law**
**Retaliation in violation of the First and Fourteenth Amendments of the United States**
**Constitution**

87.     Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

88.     Plaintiffs' adherence to *Ethical and Religious Directives* constitutes protected conduct.

89.     Plaintiffs' objections to performing certain acts pursuant to their deeply held and sincere religious beliefs, including but not limited to those arising under *Ethical and Religious Directives*, constitutes protected conduct under the First Amendment.

90.     Plaintiffs' collective assertion of grievances to Defendants McCann and Kern regarding the procedure constituted protected conduct under the First Amendment.

91.     Plaintiffs' proposal with respect to prospective procedures to control instances where law enforcement requests assistance from medical providers in a police search constituted a protected grievance under the First Amendment right of petition.

20

92.     Plaintiffs' collective and individual requests to Defendants to allow for religious, moral, and ethical objections to medical procedures without retaliation or discrimination constituted protected First Amendment conduct pursuant to the right to petition and of free speech.

93.     Plaintiffs' participation and defense, including subpoenas and discovery propounded on Defendants, in the state court action constituted First Amendment protected conduct.

94.     Plaintiffs' raising of grievances to various members of the City of Lorain, including the mayor, administrative officials, various law enforcement officers, and others, constituted protected conduct under the First Amendment.

95.     In response to the First Amendment protected activity, Defendants acted in concert to retaliate against Plaintiffs. This retaliation included termination of the Mercy Health - Lorain Hospital Police Force without prior notice or alert. It also includes the unlawful prosecution under the guise of "contempt" in the ongoing state court proceeding.

96.     Deprivation of constitutional rights is a substantial infringement on Plaintiffs' interests. Such deprivation is capable of deterring a person of ordinary firmness from exercising her constitutional rights.

97.     Elimination of the Mercy Health - Lorain Hospital Police Force, where no reasonable alternative is available, constitutes a significant adverse act capable of deterring a person of ordinary firmness from exercising constitutional rights.

98.     Elimination of the Mercy Health – Lorain Hospital Police Force puts the hospital, providers, staff, employees, patients, and visitors at a heightened risk of danger.

99.     The Ohio legislature's enactment of Ohio Revised Code Section 4973.17(2)(D)(a)(b) shows the great public interest and need for allowing Ohio's hospitals to have

21

dedicated commissioned police officers due to the unique concerns and risks associated with hospital operations.

100.    Defendants charged Plaintiffs with "contempt" for assertion of religious objections and attempts to petition the state for grievances related to their religious, ethical, and moral beliefs, as well as speech which dissented from the state's position. That filing itself expressly identifies Plaintiffs' refusal to conduct the procedure on Patient.

101.    Defendants acted within 48 hours of Plaintiffs' protected First Amendment conduct.

102.    Defendant McCann's unilateral termination of the Mercy Health – Lorain Hospital Police Force occurred less than three months following Plaintiffs' refusal to agree to conduct medical battery on Patient in furtherance of a police investigation. It additionally occurred just days following Plaintiffs' representation they would not agree to a prospective procedure which would compel medical providers to conduct medical searches which violate their moral, ethical, and religious objections

103.    More directly, Defendant Kern represented that LPD viewed the subject matter of this litigation as a wider "problem" with the medical community, stating:

> it sounds like Lorain Police consider Mercy's actions refusing to comply with the court's orders as a form of obstructing official business under R.C. 2921.31. You should also know that they had similar problems with University Hospital in Elyria where they took a suspect for a blood draw last year – which is to say that the police are frustrated with hospitals refusing to comply with search warrants issued by judges. This situation from earlier this week does not exist in a vacuum in their mind.

104.    The agreement establishing the Mercy Health – Lorain Hospital Police Force commenced in 2018 and continued without issue until the events underlying this action. The historical course of dealings between Plaintiffs and Defendants raises an inference of retaliatory

motive; what changed to cause Defendant McCann to revoke the agreement? Plaintiffs' assertion of First Amendment protections is the only answer.

105. "But for" Plaintiffs engaging in protected conduct, Defendants would not have prosecuted or persecuted Plaintiffs, or terminated the Mercy Health – Lorain Hospital Police Force in retaliation.

106. The First Amendment freedoms are clearly established rights.

107. As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

### COUNT FOUR: 42 U.S.C. § 1983
### Violation of the Unconstitutional Conditions Doctrine

108. Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

109. Defendants' elimination of the Mercy Health – Lorain Hospital Police Force infringes on Plaintiffs' First Amendment rights by penalizing protected conduct and beliefs.

110. Plaintiffs asserted religious objections and raised protected grievances to Defendants related to refusal to assist in a police search which would constitute medical battery. That search violated Plaintiffs' religious rights, which include: (1) defending human dignity; (2) upholding the sanctity of life; (3) incorporating the Catholic identity into all aspects of the doctor-patient relationship; (4) refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church; (5) allowing patients to object to medical services which the patient believes subject him to excessive risk; (6) the right and duty to protect and preserve their bodily and functional integrity; (7) advocating for those at the margins of our

society; and (8) maintaining professional standards and promoting the Catholic Church's commitment to human dignity and the common good.

111.    Plaintiffs subsequently educated Defendants on their relevant religious beliefs related to the objection to the search. Upon being informed of Plaintiffs' religious beliefs, Defendant McCann terminated the government contract and eliminated the Mercy Health – Lorain Hospital Police Force.

112.    The unconstitutional-conditions doctrine prohibits discretionary government action that terminates a government benefit in retaliation for the exercise of a constitutional right.

113.    Defendants have imposed an unconstitutional condition on Ohio Revised Code Section 4973.17(D)(2)(a)(b) hospital police forces; that is— religious-based hospitals must abandon their religious convictions to enjoy the benefits of the statute.

114.     As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

## COUNT FIVE: 42 U.S.C. § 1983
### Disparate Treatment in Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution

115.    Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

116.    The Equal Protection Clause of the Fourteenth Amendment commands that "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

117.    Defendant Kern, on behalf of and in concert with the other Defendants, expressly admit that secular hospitals were treated more favorably under similar circumstances, stating:

it sounds like Lorain Police consider Mercy's actions refusing to comply with the court's orders as a form of obstructing official business under R.C. 2921.31. You should also know that they had similar problems with University Hospital in Elyria where they took a suspect for a blood draw last year – which is to say that the police are frustrated with hospitals refusing to comply with search warrants issued by judges. This situation from earlier this week does not exist in a vacuum in their mind.

118.    In Defendants' own words, both Plaintiffs and non-party University Hospitals refused to carry out a medical search to which each had ethical or moral objections. The only differences are twofold: (1) University Hospital did not assert sincerely held religious beliefs to form the basis of their objections; and (2) University Hospital is not a Catholic health care institution like Plaintiff Mercy Health – Lorain Hospital.

119.    Defendants' acts were not narrowly tailored to the least burdensome means of achieving the government interest with respect to Plaintiffs' First Amendment protections.

120.    Plaintiffs proposed at least two readily available and less restrictive alternatives: *first*, upholding Patient's right to life, sanctity of life, and basic human dignity by allowing the "baggy" to pass naturally under medical and police observation. Importantly, this natural passing likely would have occurred during the 72-hour search window prescribed by the search warrant.

121.    *Second,* to transfer Patient to a secular or government operated medical facility, of which there are many, to perform the procedure. Instead, the government released Patient from police custody within the search window, and subsequently prosecuted, persecuted, retaliated, and discriminated against the sincerely held Catholic beliefs of Plaintiffs.

122.    Defendants did not retaliate or implement any adverse action against the secular University Hospital where "they had similar problems[.]"

25

123.     There is no rational basis for compelling medical doctors to perform medical battery which carries an unjustifiable risk of serious bodily injury or death where less invasive and safer alternatives are readily available.

124.     As a direct and proximate result of Defendants' violation of the Fourteenth Amendment Equal Protection Clause, Plaintiffs have suffered irreparable harm, including the loss of their fundamental constitutional rights, entitling them to declaratory and injunctive relief and damages.

**COUNT SIX: 42 U.S.C. § 1983**
**Deprivation of Liberty Interests without Substantive Due Process**

125.     Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

126.     Governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed under substantive due process. One aspect of substantive due process is the right to be free of "arbitrary and capricious" action by government actors. The substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.

127.     Defendants' collective actions shock the conscience in a constitutionally repugnant sense.

128.     The potentially fatal and highly invasive nature of the "search" is echoed by multiple medical doctors; if Plaintiffs had performed the search in the method demanded by Defendants,  Patient had an unjustifiable risk of death.

129.     This risk was unnecessary under Plaintiffs' alternative proposal to allow Patient to pass the substance naturally. Plaintiffs further utilized medical imaging including a CT scan.

26

130.    Importantly, Defendants never produced or alluded to a single medical professional who opined the search could have been conducted safely.

131.    Forcing medical doctors to commit medical battery with an increased risk of causing serious bodily harm or death shocks the conscience, violates traditional notions of fair play, is arbitrary and capricious, and serves no government interest that could not have been achieved using less invasive means.

132.    Forcing medical doctors to commit medical battery with an increased risk of causing serious bodily harm or death violates the right of life, basic human dignity, and protections guaranteed to persons to be free from committing egregious acts against other persons in violation of their beliefs.

133.    Stripping doctors and health care institutions of benefits including their ability to maintain a police force for their refusal to engage in such constitutionally repugnant conduct is in and of itself conscience shocking.

134.    Coercive substitution of non-medically educated police officers for that of board-certified medical doctors is conscience shocking.

135.    Coercing a person – under the threat of arrest or significant retaliation – to maim, seriously injure, or kill another person is conscience shocking and violates a person's natural inalienable rights.

136.    Defendants' conduct as to Plaintiffs' liberty interests shocks the conscience, is arbitrary and capricious and was undertaken without any regard for Defendants' duties and responsibilities under the law. Defendants' actions were also taken in bad faith, in abuse of their official offices, and with malice of purpose in direct violation of the color of controlling law, which

actions individually and collectively caused Plaintiffs harm, for which Plaintiff seeks injunctive relief and damages to be proven at trial.

## COUNT SEVEN: 42 U.S.C. § 1983
## Deprivation of Liberty Interests without Procedural Due Process

137.    Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

138.    Ohio's general assembly created a liberty interest for medical professionals and institutions which provides total immunity from civil, criminal, administrative liability, **or any other adverse action**, resulting from refusal to perform any procedure which violates their right of conscience:

> (D) A medical practitioner, health care institution, or health care payer shall not be civilly, criminally, or administratively liable for exercising the practitioner's, institution's, or payer's right of conscience by declining to participate in or pay for a particular health care service.
>
> A health care institution shall not be civilly, criminally, or administratively liable for the exercise of conscience rights not to participate in a particular health care service by a medical practitioner who is employed by, under contract with, or granted admitting privileges by the health care institution.
>
> **A medical practitioner, health care institution, or health care payer shall not be discriminated against or suffer any other adverse action as a result of declining to participate in or pay for a particular health care service on the basis of conscience.**

Ohio Rev. Code § 4743.10(D).

139.    Without notice, hearing, or ability to respond, Defendants violated Plaintiffs' liberty interest to be free from adverse action related to their right of conscience in refusal to conduct a potentially fatal, medical battery.

140.    Termination of Plaintiffs' police force as a result of asserting rights under Ohio Rev. Code § 4743.10(D) is "any . . . adverse action" as contemplated by the statute.

141.    Because the Ohio General Assembly granted protections and immunity from adverse action, Defendants' acts in this case impermissibly deprive Plaintiffs of that conferred right without any procedural rights.

142.    As a direct and proximate result of each and every of the Defendants' actions alleged herein, Plaintiffs have been harmed in an amount to be more particularly demonstrated at trial.

## COUNT EIGHT: Violation of Ohio Rev. Code § 4743.10

143.    Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

144.    Ohio Rev. Code § 4743.10(D) provides total statutory immunity for medical providers and institutions for asserting objections of conscience against performing medical procedures.

The protections for Ohio's medical practitioners on this basis could not be more clear:

(D) A medical practitioner, health care institution, or health care payer shall not be civilly, criminally, or administratively liable for exercising the practitioner's, institution's, or payer's right of conscience by declining to participate in or pay for a particular health care service.

A health care institution shall not be civilly, criminally, or administratively liable for the exercise of conscience rights not to participate in a particular health care service by a medical practitioner who is employed by, under contract with, or granted admitting privileges by the health care institution.

**A medical practitioner, health care institution, or health care payer shall not be discriminated against or suffer any other adverse action as a result of declining to participate in or pay for a particular health care service on the basis of conscience.**

145.    All Plaintiffs aver uniformly:

a. The interior walls of the anal cavity are highly absorptive. Should a bag containing an unknown quantity of an unknown drug indeed be concealed in [Patient]'s rectum, the perforation of that bag and subsequent release of the substance into [Patient's] body has a high likelihood of being fatal.

b. Based on my evaluation of [Patient], as well as my education, training and experience in the field of medicine, and in accordance with accepted medical standards, I determined that a cavity search would be so highly dangerous and unnecessary as to rise to the level of medical battery.

c. It is my opinion that such a cavity search is unreasonable and the performance of such a search would be against my medical advice.

d. The performance of such an invasive cavity  search is contrary to my personal medical ethics and would subject not only the patient, but also myself and my medical license to irreparable harm.

146.    With these averments, Plaintiffs are immune from any discriminatory or otherwise adverse action.

147.    Defendants were entirely aware of Plaintiffs' position that they would not conduct medical procedures which violated their "right of conscience."

148.    The right to decline enjoys immunity in no uncertain terms. Defendants' termination of the Mercy Health – Lorain Hospital Police Force resulting from Plaintiffs' right of conscience is an act of abuse and is unlawful discrimination, adverse action, and retaliation.

149.     All Plaintiffs have sincere ethical and moral objections to performing the manual rectal cavity search under the circumstances of this case.

150.    Under Ohio Revised Code § 4743.10(F), "[a] civil action for damages, injunctive relief, or any other appropriate relief may be brought by any medical practitioner, health care institution, or health care payer for any violation of any provision of this section. Upon a finding of a violation of the rights of conscience in this section, a court shall award threefold the actual

damages sustained and reasonable costs and attorney's fees. A court considering such civil action may also award injunctive relief, which may include reinstatement of a medical practitioner to the practitioner's previous position, reinstatement of board certification, and relicensure of a health care institution or health care payer."

151.    Plaintiffs seek all remedies available under Ohio Revised Code § 4743.10.

### COUNT NINE: Ohio Rev. Code § 2933.32

152.    Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

153.    Defendants are not permitted to compel Plaintiffs or other medical providers to set aside medical judgment when performing medical searches pursuant to Ohio Rev. Code § 2933.32.

154.    Ohio Rev. Code § 2933.32 specifically dictates a body cavity search should not be conducted if the suspected evidence could otherwise be retrieved.

155.    Medical judgment, medical standard of care, and ethics governing medical professionals are necessarily read into Ohio Rev. Code § 2933.32.

156.    If it did not want searches under section 2933.32 to be conducted in accordance with the laws governing medical doctors, i.e. within the standard of care, the Ohio General Assembly would not have mandated medical providers to conduct the searches.

157.    Plaintiffs seek declaratory judgment that Ohio Rev. Code § 2933.32 incorporates the medical standard of care, medical judgment, and medical ethics when performing a body cavity search.

### COUNT TEN: § 1985 – Conspiracy to Deprive of the Equal Protection of the Laws

158.    Plaintiffs incorporate by reference all preceding paragraphs as if fully rewritten herein.

31

159. All Defendants collectively, directly and indirectly, conspired to violate Plaintiffs' constitutional rights described above. This was a collective effort to retaliate, discriminate, and publicly persecute Plaintiffs for the exercise of constitutional rights.

160. Plaintiffs accordingly assert all claims against each member of the conspiracy.

161. Plaintiffs seek damages, injunctive relief, and all other remedies available under the law against Defendants.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs, Mercy Health – Regional Medical Center d/b/a Mercy Health – Lorain Hospital, Mercy Health Lorain LLC, Gil Palmer, M.D., and Alok Jain, M.D.**,** pray for the following relief:

a) As to Count One, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

b) As to Count Two, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

c) As to Count Three, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

d) As to Count Four, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

e) As to Count Five, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

f) As to Count Six, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

g) As to Count Seven, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

h) As to Count Eight, threefold the actual damages sustained and reasonable costs and attorney's fees, injunctive relief, and all other relief available under Ohio Rev. Code § 4743.10.

i) As to Count Nine, declaratory judgment and injunctive relief.

j) As to Count Ten, compensatory damages, punitive damages as permitted under 42 U.S.C. § 1983 and any other applicable law, plus pre-judgment and post-judgment interest, costs of suit, injunctive relief, and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

k) As to all Counts, any and all further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Erin Siebenhar Hess*
Erin Siebenhar Hess (0074007)
Brian D. Sullivan (0063536)
Taylor C. Knight (0089531)
Jorden R. Messmer (0102652)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
P: (216) 687-1311 F: (216) 687-1841
Email:  ehess@reminger.com
tknight@reminger.com
jmessmer@reminger.com

*Counsel for Plaintiffs*

## **<u>JURY DEMAND</u>**

Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted,

*/s/ Erin Siebenhar Hess*

Erin Siebenhar Hess (0074007)
Taylor C. Knight (0089531)
Jorden R. Messmer (0102652)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
P: (216) 687-1311 F :( 216) 687-1841
Email:   ehess@reminger.com
         tknight@reminger.com
         jmessmer@reminger.com

*Counsel for Plaintiffs*

## **VERIFICATION**

I declare under penalty of perjury under the laws of the State of Ohio and the United States of America that I have read the foregoing Complaint, know the contents thereof, and believe them to be true and correct.

DATED at Lorain, Ohio this ___ day of December, 2024.

_____
Dr. Gil Palmer

SUBSCRIBED and SWORN before me this **31st** day of **December, 2024.**

_____
Notary Public

PETER VELICONIA
NOTARY PUBLIC - OHIO
MY COMMISSION EXPIRES
01-28-28