**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MERCY HEALTH – REGIONAL | : | CASE NO.: |
| MEDICAL CENTER D/B/A MERCY | : | |
| HEALTH – LORAIN HOSPITAL, *et al.*, | : | JUDGE |
| | : | |
| Plaintiffs, | : | |
| v. | : | **MOTION FOR TEMPORARY** |
| | : | **RESTRAINING ORDER AND** |
| CITY OF LORAIN, *et al.*, | : | **PRELIMINARY INJUNCTION** |
| | : | |
| Defendants. | : | |

Now come Plaintiffs, Mercy Health – Regional Medical Center d/b/a Mercy Health –

Lorain Hospital, Mercy Health Lorain, LLC,  Gil Palmer, M.D., and Alok Jain, M.D. (collectively

"Mercy Health"), and hereby respectfully request this Court issue a Temporary Restraining Order

against Defendants prohibiting them from terminating the agreement between the City of Lorain

on behalf of the Lorain Police Department, by and through its Chief of Police, and Mercy Health

- Regional Medical Center LLC d/b/a Mercy Health – Lorain Hospital, which became effective

January 1, 2018. That agreement permits all appointed and commissioned officers employed by

the proprietary Mercy Health Lorain Police Department to engage in police officer duties and

activities at, and for the protection of, Mercy Health – Lorain Hospital under Ohio Revised Code

§ 4973.17(D)(2)(a)-(b).

The grounds for this Motion are that Defendants' termination of the agreement constitutes

First Amendment retaliation and violates the Free Exercise Clause, the Equal Protection Clause,

the unconstitutional-conditions doctrine, Mercy Health's substantive and procedural due process

rights, Ohio Rev. Code § 4743.10, Ohio Rev. Code § 2933.32, and Ohio's Constitutional Free

Exercise Clause.

Pursuant to Fed. R. Civ. P. 65(B), Mercy Health requests that the Preliminary Injunction hearing set in this matter be consolidated with the trial on the merits.

Mercy Health seeks the requested temporary restraining order be granted until such time that an evidentiary hearing can be scheduled, and a Preliminary Injunction order issued. Plaintiffs incorporate the factual allegations of the contemporaneously filed Verified Complaint.

A brief in support is attached hereto, made a part hereof, and incorporated by reference as if fully rewritten herein.

Respectfully submitted,

*/s/ Erin Siebenhar Hess*
Erin Siebenhar Hess (0074007)
Taylor C. Knight (0089531)
Jorden R. Messmer (0102652)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
P: (216) 687-1311- F :( 216) 687-1841
Email:   ehess@reminger.com
          tknight@reminger.com
          jmessmer@reminger.com

*Counsel for Plaintiffs*

**BRIEF IN SUPPORT**

## I.    INTRODUCTION

       This action arises from discriminatory and constitutionally repugnant abuses by the City of Lorain, its Police Chief, James McCann, John Does 1-5 who worked at Chief McCann's direction, Lorain County Assistant Prosecutor Matthew Kern, former Lorain prosecutor J.D. Tomlinson, City Law Director Patrick Riley, and Police Legal Advisor Joseph Laveck. These individuals, acting in concert and under the color of law, have commenced a campaign against the community's medical care providers, medical institutions, and religious bodies, for the refusal to conduct what undeniably would have amounted to a likely fatal act of medical battery. The defendants are actively attempting to imprison doctors, persecute medical providers based upon their religious beliefs and affiliations, and entirely strip religious medical institutions of police protection as retaliation. The movants pray for immediate intervention and injunctive relief from this Honorable Court.

> ### A.    Mercy Health — Lorain Hospital is a ministry of the Catholic Church. All employees, staff, and credentialed medical providers are required to abide by the Ethical and Religious Directives for Catholic Health Care Services.

       Mercy Health — Lorain Hospital is a 338-bed non-profit hospital, which operates as an arm of the Catholic Church. Pursuant to that ministry, all medical staff are required to "[a]bide by the Ethical and Religious Directives for Catholic Health Care Services promulgated by the National Conference of Catholic Bishops as interpreted by the Diocese of Cleveland." (*Medical Staff Bylaws*, Mercy Health Lorain Hospital & Mercy Allen Hospital, at 12), attached hereto as Exhibit "A." "The purpose of these *Ethical and Religious Directives* . . . is twofold: first, to reaffirm the ethical standards of behavior in health care that flow from the Church's teaching about **the dignity of the human person**; second, to provide authoritative guidance on certain moral

3

issues that face Catholic health care today." (Ethical and Religious Directives for Catholic Health Services, *Sixth Edition*, at 4), attached hereto as Exhibit "B" (bold emphasis added).

The United States Conference of Catholic Bishops established Directives underscoring its mission. First and foremost, "Catholic health care ministry is rooted in a commitment to promote and defend human dignity; this is the foundation of its concern to respect the **sacredness of every human life** from the moment of conception until death. The first right of the human person, **the right to life**, entails a right to the means for the proper development of life, such as adequate health care." *Id.* at 8 (emphasis added). Importantly, the Directives note that "within a pluralistic society, Catholic health care services will encounter requests for medical procedures contrary to the moral teachings of the Church. **Catholic health care does not offend the rights of individual conscience by refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church**." *Id.* (emphasis added).

With respect to professional-patient relationship, the Catholic Directives are clear: "The Church's moral teaching on health care nurtures a truly interpersonal professional-patient relationship. **This professional-patient relationship is never separated, then, from the Catholic identity of the health care institution.** The faith that inspires Catholic health care guides medical decisions in ways that fully respect the dignity of the person and the relationship with the health care professional." *Id.* at 13 (emphasis added).

Mercy Health — Lorain Hospital is a Catholic health care provider, subject to Catholic health care directives, in furtherance of the "embrace of Christ's healing mission[.]" *Id.* at 8.

## II.    FACTUAL BACKGROUND

On the evening of August 10, 2024, the Lorain Police Department ("LPD") arrived at the Mercy Health – Lorain Hospital Emergency Department with a detainee, "Patient." Lorain police

officers requested Mercy Health physicians to both medically clear and perform a body cavity search to remove a foreign object from Patient. The foreign object was described as a baggy partially sticking out of Patient's rectum at the time of their arrest that LPD suspected contained drugs. A search warrant was also provided to the Mercy Health – Lorain Hospital Emergency Department staff at that time, which directed LPD, Lorain Correctional, or any authorized medical personnel acting as an authorized agent of the LPD to perform a body cavity search on Patient, to remove any foreign objects. The warrant commanded only public enforcement agencies to conduct the search.

Staff of Mercy Health – Lorain Hospital, a private medical provider and religious institution, conducted a CT scan to first identify whether there was indeed a foreign object concealed in Patient's rectum. Patient consented to the CT scan where it was confirmed that there was some type of matter within the bowel. The clinician reading the scan was unable to discern what the matter was, stating that it could be a foreign object or stool. Notably, Patient had a bowel movement following the CT scan and no foreign objects were identified in their stool. No foreign objects were recovered. Patient refused any further medical imaging.

Throughout their entire admission to Mercy Hospital – Lorain Hospital, Patient vehemently refused to undergo a manual rectal exam. Mercy Health also refused to perform the manual rectal exam portion of the body cavity search, because – crucially – all medical practitioners who opined on the subject matter uniformly determined there was a high risk that if a baggy containing drugs was in Patient's rectum, performing a manual rectal exam increases the risk of perforating the baggy and the bowel. Because rectal tissue has a high rate of absorption, such a perforation has a high likelihood of being fatal. That high risk of death in the performance of a prospective manual

rectal exam within the body cavity search, and the existence of a less invasive alternative, forms a substantial basis for Mercy Health's acts relevant to this claim.

On August 12, 2024, an LPD officer returned to Mercy Health with a search warrant specifically directed at: Mercy Health – Lorain Hospital, Dr. Gil Palmer, Dr. Bledar Kovaci, Dr. Alok Jain, and any other doctor in the Emergency Department or medical facility at Mercy Health – Lorain Hospital, demanding that the cavity search and foreign body removal was performed. Importantly, the "order" in the warrant to conduct the search was not made with input from a medical provider.

The City of Lorain's Chief of Police, James McCann, indicated to Dr. Gil Palmer that he would be arrested for obstruction of justice if Mercy Health did not comply with the warrant. In that regard, at the end of the business day on August 12, 2024, Dr. Palmer went home. Later that evening, he received a phone call from Chief McCann on his personal cell phone who stated he would be arrested for fleeing the scene and obstruction of justice if he did not return to the hospital. However, due to the patent and unjustifiable danger of the procedure – and that an alternative safer option existed, i.e., allowing for a bowel movement under observation – Mercy Health continued to exercise its right to refuse to perform the manual rectal exam portion of the cavity search under O.R.C. § 4743.10(D). That statute unequivocally allows medical practitioners and health care institutions to refuse to participate in any medical procedure that violates the practitioner's right of conscience — including religious objection, stating:

> A medical practitioner, health care institution, or health care payer shall not be civilly, criminally, or administratively liable for exercising the practitioner's, institution's, or payer's right of conscience by declining to participate in or pay for a particular health care service.

\* \* \*

> A medical practitioner, health care institution, or health care payer shall not be discriminated against or suffer any other adverse action as a result of declining to participate in or pay for a particular health care service on the basis of conscience.

*Id.* (emphasis added). Plaintiffs have explicit immunity from the civil, criminal, and administrative penalty under the Ohio statute for the refusal to participate in a medical procedure; the statute further prohibits any discrimination or adverse action against the institution or providers for refusal to participate. Importantly, Mercy Health is a ministry of the Catholic Church. **All** employees and medical providers at Mercy Health facilities are required to uphold the ethical and religious directives for Catholic health care services.

On the evening of August 12, 2024, following Plaintiffs' refusal to perform the manual cavity search of Patient's rectum, the LPD removed Patient from Mercy Health -Lorain Hospital and released them from police custody. Notably, the August 12, 2024 search warrant set forth a 3-day period for compliance, through August 15, 2024. The release of Patient by the LPD made any cavity search impossible to conduct. It further prevented the observed natural passing of any foreign substance.

### A. Contempt Proceeding

On August 14, 2024, in an email correspondence with undersigned counsel, Lorain Assistant Prosecutor Matthew Kern stated:

> Frankly, it sounds like Lorain Police consider Mercy's actions refusing to comply with the court's orders as a form of obstructing official business under R.C. 2921.31. You should also know that they had similar problems with University Hospital in Elyria where they took a suspect for a blood draw last year – which is to say that the police are frustrated with hospitals refusing to comply with search warrants issued by judges. This situation from earlier this week does not exist in a vacuum in their mind.

*See* Correspondence, attached hereto as Exhibit "C." Notably, no adverse action was ever initiated against the secular health care institution which, by Defendants' own representations, engaged in

"similar" conduct. And importantly, Defendants Kern and McCann have represented that this behavior is a pattern, which has occurred multiple times in the past, and which they will pursue again in the future.

On August 13, 2024, the State of Ohio, by way of the Lorain County Prosecutor's office, filed a criminal complaint against Mercy Health and its medical providers for contempt under Ohio Rev. Code § 2705.02(A). The basis of the charge states Mercy Health and its agents were required to perform the medical procedure, and had no power to refuse to perform the procedure for reasons including the medical standard of care, ethical objections, religious objections, and moral objections.

That proceeding is active. To support its defenses, Mercy Health subpoenaed Chief McCann's personal cell phone records for the period relevant to its defenses. Chief McCann moved to quash the subpoena. During the initial hearing, the state court instructed the parties to confer and attempt to agree upon a procedure for instances where the police bring a person to the hospital seeking to compel Mercy Health's providers to perform a medical search of the patient.

Following an exchange of proposals to avoid future conflict, Mercy Health made clear that it could not agree to medical providers being compelled to perform procedures which they opine, in their professional medical opinion, are unjustifiably dangerous, breach the standard of care, or constitute medical battery. Mercy further represented it could not agree to force medical providers to violate their personal and sincere beliefs and objections to performing such procedures on moral, ethical, or religious grounds. And finally, as a Catholic ministry, that Mercy Health itself was subject to the Ethical and Religious Directives of Catholic Health Care Services, which it cannot abandon.

**B. Lorain PD Chief of Police James P. McCann terminated the agreement allowing Mercy Health – Lorain Hospital's Police Force to exist because Mercy Health and its medical doctors refused to perform a potentially fatal medical battery.**

On November 12, 2024, the day after the meet and confer between Mercy Health and Assistant Prosecutor Matthew Kern, Lorain PD Chief of Police James P. McCann sent correspondence terminating the Mercy Health Lorain's Police Force, stating:

> On January 1, 2018, Lorain Police Chief Cel Rivera entered into an agreement with Mercy Health of Lorain to establish the Mercy Health Police Department at Lorain Mercy Regional Medical Center. Effective **January 1, 2025**, the agreement between the Lorain Mercy Health Police Department and the Lorain Police Department is hereby terminated. Effective January 1, 2025, no person may act in the capacity of a police officer at any Mercy Hospital Facility within the City of Lorain.

This termination letter was sent without prior notice of any kind. LPD Chief James P. McCann's decision to strip and totally bar police presence from the 338-bed hospital comes, in part, at the direction of Lorain County Assistant Prosecutor Matthew Kern and/or the City of Lorain Assistant Law Director, Joseph LaVeck. Plaintiffs exhausted other avenues to address Chief McCann's actions, including petitioning the Mayor of Lorain, Jack W. Bradley, for intervention; these efforts proved futile.

Mercy Health – Lorain Hospital Police Department is the proprietary police department created and maintained by Mercy Health – Lorain Hospital. Effective January 1, 2018, the City of Lorain's Police Department and Mercy Health – Lorain Hospital entered into an agreement under Ohio Rev. Code § 4973.17 permitting all appointed and commissioned officers employed by Mercy Health – Lorain Hospital Police Department to engage in police officer duties and activities at, and for the protection of, Mercy Health - Lorain Hospital. These privately employed

police officers "shall hold office for three years, unless, for good cause shown, their commission is revoked by the secretary of state or by the hospital, as provided by law." *Id*. at (D)(4).

Mercy Health – Lorain Hospital's Police Department currently staffs nine police officers, a Chief of Police, and an emergency manager. The nine commissioned police officers compose the Mercy Health – Lorain Hospital Police Force. Mercy Health – Lorain Hospital Police Department additionally employees 2 full-time security officers and 4 PRN ("as needed") security officers. The Mercy Health – Lorain Hospital Police Force is essential to the function of Mercy Health - Lorain Hospital. Unlike a mere security force, police are permitted to exercise arresting power, maintain superior training and certifications, and are more well equipped to keep the peace; their presence is a crucial element to the care provided at Mercy Health - Lorain Hospital.

The announcement by Chief McCann has thrust the safety and operation of the hospital into uncertainty. In the first instance, current police department members are immediately forced to seek alternative employment if they wish to retain their commission as a police officer. Police officers' commission requires they be employed by a statutory police force; if they are reclassified as armed security, it will result in immediate forfeiture of their police commission. All nine members of the police force will lose their commission effective January 1, 2025 and, more likely than not, will seek alternative employment as commissioned police officers, which will eliminate a dedicated police presence at Mercy Health – Lorain Hospital.

In turn, Mercy Health is forced to seek out security officers to fill the role of what will become Mercy Health – Lorain Hospital's protective services department. The inability to maintain an adequate security force brings heightened risks to the hospital, its staff, providers, patients, and community. Initial efforts have proven that obtaining an adequate replacement in the time frame available is not possible. Mercy Health - Lorain Hospital will be substantially without adequate

security presence for a substantial portion of 2025 should the Mercy Health Lorain Police Force be eliminated.

There is no justification for the retaliatory decision to unilaterally terminate the police force with less than two months' notice. Upending lives, and endangering the public; to what end?

## III.  LAW AND ANALYSIS

Mercy Health respectfully requests this Court to issue a temporary restraining order and preliminary injunction enjoining Defendants from eliminating the Mercy Health – Lorain Hospital Police Force on January 1, 2025.

Courts consider four factors in determining whether to issue a TRO or preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991). In First Amendment violation claims, "the likelihood of success on the merits often will be the determinative factor." *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).

### A.  Mercy Health is likely to prevail on the merits.

Plaintiffs are likely to succeed on the merits of this case arising under various theories of First Amendment retaliation, Free Exercise violations, disparate treatment in violation of the Equal Protection Clause, substantive due process violations, procedural due process violations, violations of Ohio Rev. Code § 4743.10, Ohio Rev. Code § 2933.32, and Ohio state constitutional claims.

Sixth Circuit precedent further dictates that "[a]ctions for injunctions in constitutional cases often turn on the likelihood of success on the merits, making it unnecessary to dwell on the remaining three factors ---- irreparable harm, balance of harms and public interest." *Grantonz v. Earley*, 2021 U.S. Dist. LEXIS 236429, *11 (N.D. Ohio) (citing *Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020); *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (*en banc*) (*per curiam*)).

1. Defendants violated Mercy Health's Free Exercise of Religion

"The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia, Pennsylvania*, 141 S.Ct. 1868, 1876 (2021). "The Free Exercise Clause in our Constitution provides protections against a law that 'discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons.'" *Dahl v. Board of Trustees of Western Michigan University*, 2021 WL 3891620, *2 (W.D. Mich. 2021) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (2021)). "[R]eligious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Review Bd. of Ind. Employment Security Div.*, 450 U.S. 707, 714 (1981). "Laws or policies that incidentally burden religion are typically not subject to strict scrutiny under the Free Exercise Clause as long as they are neutral and generally applicable." *Grantonz v. Earley*, 2021 U.S. Dist. LEXIS 236429, *6 (N.D. Ohio).

Importantly, "[w]hen [a] law forces an individual to choose between following her religious beliefs or forfeiting benefits, the law places a substantial burden on the individual's free exercise of religion." *Id.* (citing *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x

729, 734 (6th Cir. 2007)). "An individual's rights under the Free Exercise Clause are violated when the state compels her to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion.'" *A.P. v. A.P.*, 598 F. Supp. 3d 598, 609 (E.D. Mich 2022) (internal quotations omitted). Moreover, non-profits are equally afforded protection under the Free Exercise Clause as individuals. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 708 (2014) ("The Court has entertained RFRA and free-exercise claims brought by nonprofit corporations."); *Autocam Corp. v. Sebelius*, 730 F.3d 618, 626 (6th Cir.) ("[t]he Supreme Court consistently treated free exercise rights as confined to individuals and non-profit religious organizations."); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1134 (10th Cir. 2013) ("As should be obvious, the Free Exercise Clause at least extends to associations like churches—including those that incorporate.").

Here, Defendants attempted to force Plaintiffs to perform acts forbidden by Catholic faith, i.e., perform a potentially fatal medical battery which falls beneath the medical standard of care, accepted medical ethics, and which violate the fundamental tenants of Catholic health care, which include: (1) defending human dignity; (2) upholding the sanctity of life; (3) incorporating the Catholic identity into all aspects of the doctor-patient relationship; (4) advocate for and protect the vulnerable; (5) maintain professional standards; (6) protect and preserve bodily and functional integrity; (7) patient is not be obliged to a procedure...that imposes excessive risks and burdens on the patient; and (8) refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church.

All medical providers who have opined on the subject matter of this case have agreed that performing a manual rectal cavity search against a resisting patient carried a high likelihood of perforating the suspected drug-filled baggy. The high absorption rate of rectal tissue all but

guarantees that a perforation would have killed Patient. Performing such a dangerous procedure without patient consent, when less invasive and safer alternatives are available, cannot be squared with the central tenets of Catholic health care.

To be compelled to perform procedures which render *life* valueless, and which relegates basic human dignity as obsolete, directly violates the Catholic faith. Compelling such a procedure coerces Plaintiffs to violate their sincerely held religious beliefs in violation of the Free Exercise Clause. *A.P.*, 598 F. Supp. 3d at 609 ("The Supreme Court has explained that it is necessary in a free exercise case for one to show the coercive effect of the [official conduct] as it operates against [the individual] in the practice of his [or her] religion.") (internal quotations omitted).

2. Ohio's Constitutional Free Exercise Clause provides broader protections than the First Amendment.

Ohio's Free Exercise counterpart is found in Article I, Section 7 of the Ohio Constitution. That clause states:

> All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any place of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. No religious test shall be required, as a qualification for office, nor shall any person be incompetent to be a witness on account of his religious belief; but nothing herein shall be construed to dispense with oaths and affirmations. Religion, morality, and knowledge, however, being essential to good government, it shall be the duty of the general assembly to pass suitable laws to protect every religious denomination in the peaceable enjoyment of its own mode of public worship, and to encourage schools and the means of instruction.

*Humphrey v. Lane*, 89 Ohio St. 3d 62, 66 (Ohio 2000) (quoting Section 7, Article I, Ohio Constitution).

In comparison to the First Amendment of the United States Constitution, the Ohio Supreme Court noted "[t]he Ohio Constitution does have an eleven-word phrase that distinguishes itself

from the United States Constitution: 'nor shall any interference with the rights of conscience be permitted.'" *Id.* at 67 (quoting Section 7, Article I, Ohio Constitution). The Ohio Supreme Court reasoned the Ohio Constitution thus expanded religious protections beyond that of the First Amendment, holding:

> We find the phrase that brooks no 'interference with the rights of conscience' to be broader than that which proscribes any law prohibiting free exercise of religion. **The Ohio Constitution allows no law that even interferes with the rights of conscience.** The federal Constitution concerns itself with laws that prohibit the free exercise of religion. By its nature the federal Constitution seems to target laws that specifically address the exercise of religion, i.e., not those laws that tangentially affect religion. Ohio's ban on any interference makes even those tangential effects potentially unconstitutional.

*Id.* (emphasis added). Ohio therefore imposes a two-part test for state action which directly or indirectly encroaches on religious rights of conscience: (1) "the state enactment must serve a compelling state interest;" and (2) the action "**must be the least restrictive means of furthering that interest**." *Id.* (emphasis added). In Ohio, even neutral state action is constitutionally prohibited where it encroaches on religious beliefs and is not the least restrictive means of furthering a compelling state interest.

The United States Congress enacted the Religious Freedom Restoration Act of 1993, as amended ("RFRA"). RFRA is not applicable to the states; however, it adopted the exact test set forth by the Ohio constitution, bringing Federal and State "least restrictive means" requirements into parity. *Doe v. Cong. of the United States*, 891 F.3d 578, 584-585 (6th Cir. 2018) ("(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'") (citing 42 U.S.C. § 2000bb-1(a)—(b)). Therefore, Federal case law arising under RFRA provides persuasive authority on Ohio's Free Exercise protections.

Here, state action is not the least restrictive means of furthering the compelling state interest of police investigation. Indeed, Plaintiffs asserted a number of religious objections to the compelled procedure which constituted a potentially fatal medical battery, including: (1) defending human dignity; (2) upholding the sanctity of life; (3) incorporating the Catholic identity into all aspects of the doctor-patient relationship; and (4) refusing to provide or permit medical procedures that are judged morally wrong under Catholic faith, by the United States Conference of Catholic Bishops.

Plaintiffs proposed at least two readily available and less restrictive alternatives: (1) upholding Patient's right to life, sanctity of life, and basic human dignity by allowing the "baggy" to pass naturally under medical and police observation. Importantly, this natural passing would have more than likely occurred during the 72-hour search window prescribed by the search warrant; or (2) transfer Patient to a secular or government operated medical facility, of which there are many, to perform the procedure. Instead, the government released Patient within the search window, and subsequently prosecuted, persecuted, retaliated, and discriminated against the sincerely held Catholic beliefs of Mercy Health.

Defendants' conduct in this matter was not the least restrictive to Plaintiffs' Free Exercise of their Catholic faith, rendering it unconstitutional under the Ohio Constitution.

3.  <u>Mercy Health is likely to prevail on a First Amendment Claim.</u>

Defendants expressly attribute their conduct in this matter to Plaintiffs' assertion of religious objections to conduct which violates Catholic directives and morality. Moreover, Defendants acted in response to Plaintiffs' First Amendment right to petition the government for related grievances.

"First Amendment retaliation claims are analyzed under a burden-shifting framework. A plaintiff must first make a prima facie case of retaliation, which comprises the following elements:(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 274 (6th Cir. 2012) (internal citations and quotations omitted).

### i.     *Plaintiffs engaged in constitutionally protected conduct.*

Mercy Health's adherence to Ethical and Religious Directives for Catholic Health Services constitutes protected conduct. "An act taken in retaliation for the exercise of a constitutionally protected right is actionable even if the action would have been proper if taken for a different reason." *Ward v. Members of the Bd. of Control of E. Mich. Univ.*, 700 F. Supp. 2d 803, 815 (E.D. Mich 2010) (citing *Hoover v. Radabaugh*, 307 F.3d 460, 467 (6th Cir. 2002).

"The right to free exercise of religion includes the right to engage in conduct that is motivated by the religious beliefs held by the individual asserting the claim." *Bible Believers v. Wayne County*, 805 F.3d 228, 255-256 (6th Cir. 2015) (citing *Prater v. City of Burnside*, 289 F.3d 417, 427 (6th Cir. 2002)). "The government cannot prohibit an individual from engaging in religious conduct that is protected by the First Amendment." *Id.*

Plaintiffs Mercy Health – Regional Medical Center d/b/a Mercy Health – Lorain Hospital, Mercy Health Lorain LLC, Gil Palmer, M.D., and Alok Jain, M.D., all engaged in conduct protected by the First Amendment; adherence to Ethical and Religious Directives for Catholic Health Services. That adherence to the Catholic Ethical and Religious Directives includes, among others, (1) defending human dignity; (2) upholding the sanctity of life; (3) incorporating the

Catholic identity into all aspects of the doctor-patient relationship; (4) advocate for and protect the vulnerable; (5) maintain professional standards; (6) protect and preserve bodily and functional integrity; (7) patient is not be obliged to a procedure...that imposes excessive risks and burdens on the patient; and (8) refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church. Each plaintiff alerted Defendants that the procedure on Patient ran afoul of their professional, moral, ethical, and/or religious beliefs as prescribed by the Catholic mission. Assertions of religious objections to state-action which compel a private actor to be an agent of the state is protected religious activity. *Cf. Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1052 (W.D. Mich 2017) ("holding that retrospectively, the doctrine prohibits discretionary government action that terminates a government benefit in retaliation for the exercise of a constitutional right.") (citing *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1258 (10th Cir. 2016)).

Plaintiffs also engaged in the protected Right to Petition their government. The Right to Petition is a broad right, which the Sixth Circuit has "held more generally that seeking redress from a government official qualifies as petitioning[.]" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 863 (6th Cir. 2012). "[G]overnment retaliation for filing a petition violates the literal language of the Petition Clause." *Rescue Mental Health & Addiction Servs.*, 2023 U.S. Dist. LEXIS 21667, at *37 (N.D. Ohio).

Additionally, "[t]he Supreme Court has recognized the 'right to petition as one of the most precious of the liberties safeguarded by the Bill of Rights.'" *Rudd v. City of Norton Shores*, 977 F.3d 503, 513 (6th Cir. 2020) (internal quotations omitted). "[T]he Supreme Court has held that the right allows an ordinary citizen to 'convey the special concerns of [the petition's] author to the government,' and to 'request action by the government to address those concerns,' generally

without fear of criminal or civil repercussions." *Id.* (quoting *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388-89 (2011)).

Here, Plaintiffs requested the Lorain Police Department address multiple concerns including (1) formulating a procedure for future searches at LPD's direction which would preserve the medical standard of care, morals, ethics, and Catholic religious beliefs of Mercy Health and its providers; (2) concerns related to the dangerous procedure sought to be compelled by LPD which Mercy Health viewed as medical battery, infringements on the right to life, and violations of basic human dignity contrary to Catholic directives; (3) participating and defending the lawsuit regarding alleged violations of the search warrant in state court; (4) requests to LPD to consider less invasive methods for obtaining evidence; and (5) petitioning the Mayor of the City of Lorain to intervene on its behalf against the LPD.

Both the assertion and petition for government redress related to Plaintiffs' sincerely held religious beliefs, moral position, and/or ethical codes, constitute protected conduct under the First Amendment.

> ii. *Defendants' persecution, prosecution, and retaliation against Plaintiffs are sufficiently firm to deter a person from engaging in the protected conduct.*

In the context of First Amendment retaliation claims, an adverse action is "one that is capable of deterring a person of ordinary firmness from exercising the constitutional right in question.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (internal quotation omitted). "Merely 'inconsequential' actions that cause a 'de minimis' injury are not adverse actions." *Anders v. Cuevas*, 984 F.3d 1166, 1177 (6th Cir.). "[I]n the Sixth Circuit, the 'ordinary firmness' standard goes hand-in-hand with the de minimis exception and examines the adverse action objectively instead of the specific plaintiff's mindset or 'firmness.'" *Rescue Mental Health & Addiction Servs.*

*v. Mental Health & Recovery Servs. Bd.*, 2023 U.S. Dist. LEXIS 21667, *33-34 (N.D. Ohio) (citing *Lemaster v. Lawrence Cnty., KY*, 2022 U.S. Dist. LEXIS 13996, *19-20 (E.D. Ky. 2022)).

The primary adverse action taken in this case is Defendants' termination of the Mercy Health Police Force. That decision was made without any prior notice, leaving a 338-bed hospital entirely without its own police protection should injunctive relief not be granted prior to January 1, 2025. Stripping away police forces from a large hospital puts staff, providers, patients, and visitors at heightened risks of danger, and raises serious concerns about Mercy Health's ability to safely operate the hospital.

Further, the prosecution of Mercy Health and the doctors in state court for assertion of religious objections is a hallmark example of an adverse action in the context of First Amendment retaliation cases. For example, in *Wood v. Eubanks*, the Sixth Circuit held that where "police officers removed [plaintiff] from a public event under armed escort. That act was neither 'inconsequential' as a matter of law, nor just a 'petty slight or minor annoyance[.]'" *Wood v. Eubanks*, 25 F.4th 414, 429 (6th Cir. 2022) (citing *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 585 (6th Cir. 2012)) (cleaned up).

As a matter of law, Defendants actively pursuing the arrest of medical doctors for their religious objection to committing medical battery constitutes a sufficiently severe adverse action to deter a person of ordinary firmness from exercising First Amendment rights. Likewise, termination of Plaintiffs' police force, and the associated risk now faced by the entire medical community of Lorain, is sufficiently severe to deter assertion of First Amendment rights.

> iii.     *Defendants acted as a direct result of Plaintiffs' protected conduct.*

Plaintiffs can satisfy the final element of the prima facie case: causal connection. "To establish causation, [a plaintiff] must demonstrate that its protected [conduct] was 'a substantial or

motivating factor' of the adverse action." *Anders*, 984 F.3d at 1177 (6th Cir.) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). "This inquiry is essentially but-for cause. There is some uncertainty in [the Sixth Circuit] over whether a plaintiff must prove this but-for test or whether the plaintiff need only show that the protected conduct was a motivating factor for the action (which switches the burden to the defendant to prove the absence of but-for causation)." *Id.* (internal quotations omitted).

Plaintiffs can show at both the prima facie and burden shifting stage that "but-for" assertion of its First Amendment rights, they would not (a) have been victims of unlawful prosecution and arrest; and (b) that the Mercy Health – Lorain Hospital Police Force would not have been unilaterally terminated without prior notice.

The first "but for" is express — Defendants requested Plaintiffs be charged with "criminal contempt" for assertion of religious objections and attempts to petition the state for grievances related to their religious, ethical, and moral beliefs. That filing itself expressly identifies Plaintiffs' refusal to conduct the procedure on Patient. *See* Motion to Show Cause, attached hereto as Exhibit "D" ("Following that doctor presenting the warrant to hospital staff and legal counsel for input, Mercy Health Hospital refused to comply with the Court's warrant and refused to conduct the search. This motion now follows."). Moreover, Defendants acted within 48 hours of Plaintiffs' protected First Amendment conduct. *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) ("We have previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive.").

Further, Chief of Police James McCann's unilateral termination of the Mercy Health – Lorain Hospital Police Force occurred less than three months following Mercy Health's refusal to agree to conduct medical battery on Patient in furtherance of a police investigation. It additionally

occurred just days following Mercy Health's representation it would not agree to a prospective procedure that would compel its medical providers to conduct medical searches which violate their moral, ethical, and religious objections. Therefore, causal connection is satisfied by temporal proximity. *King*, 680 F.3d at 695 ("We have previously considered the temporal proximity between protected conduct and retaliatory acts as creating an inference of retaliatory motive.").

More directly, Defendant Kern represented that Lorain PD viewed the subject matter of this litigation as a wider "problem" with the medical community, stating:

> it sounds like Lorain Police consider Mercy's actions refusing to comply with the court's orders as a form of obstructing official business under R.C. 2921.31. You should also know that they had similar problems with University Hospital in Elyria where they took a suspect for a blood draw last year – which is to say that the police are frustrated with hospitals refusing to comply with search warrants issued by judges. This situation from earlier this week does not exist in a vacuum in their mind.

*See* Exhibit "C." And, the agreement establishing the Mercy Health – Lorain Hospital Police Force commenced in 2018 and continued without issue until the events underlying this action. The historical course of conduct between Mercy Health and Defendants raises an inference of retaliatory motive; what changed to cause Defendant McCann to revoke the agreement? Mercy Health's assertion of First Amendment protections is the only answer.

Mercy Health is accordingly likely to succeed on the merits of the First Amendment retaliation claims.

### 4. Defendants' retaliatory acts violate the unconstitutional conditions doctrine.

Defendants' elimination of the Mercy Health – Lorain Hospital Police Force infringes on Plaintiffs' First Amendment rights by penalizing protected conduct and beliefs.

The Sixth Circuit has adopted the unconstitutional-conditions doctrine, as follows:

> The unconstitutional-conditions doctrine restricts the government's ability to deny a valuable government benefit to a person on a basis that infringes his

constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly." Such interference with constitutional rights is impermissible.

*Daunt v. Benson*, 999 F.3d 299, 316 (6th Cir. 2021). "The doctrine applies whether the government approves a benefit that comes with a condition or whether the government denies a benefit because the applicant refuses to meet the condition." *Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1052 (W.D. Mich 2017). "Retrospectively, the doctrine prohibits discretionary government action that terminates a government benefit in retaliation for the exercise of a constitutional right." *Id.* at 1052.

For example, in *Country Mill Farms*, the court held the city-defendant violated the unconstitutional-questions doctrine "[a]fter the [c]ity learned that [p]laintiffs would not hold same-sex weddings on their farms because of Plaintiffs' religious beliefs[.]" *Id.* at 738. In that case, "the [c]ity amended the Vendor Guidelines to incorporate the neutral and generally applicable law and applied it to [p]laintiffs" to prohibit the plaintiffs from future government contracts based upon their religious objection to same-sex marriage. *Id.* The court held that the "[c]ity's action is a veiled cover for targeting belief or a faith-based practice." *Id.* (internal quotations omitted).

Like *Country Mill Farms*, Plaintiffs asserted religious objections and raised protected grievances to Defendants related to refusal to assist in a police search which would constitute medical battery. That search violated Plaintiffs' religious rights, which include (1) defending human dignity; (2) upholding the sanctity of life; (3) incorporating the Catholic identity into all aspects of the doctor-patient relationship; and (4) refusing to provide or permit medical procedures that are judged morally wrong by the teaching authority of the Church. *See* Ethical and Religious Directives for Catholic Health Services, *Sixth Edition*, at 4. Further, Mercy Health subsequently

educated Defendants on their relevant religious beliefs related to objection to the search. Upon being informed of Mercy Health's religious beliefs, Defendant McCann terminated the government contract and eliminated the Mercy Health – Lorain Hospital Police Force.

Thus, Plaintiffs are likely to prevail under the unconstitutional-conditions doctrine.

5. <u>Defendants treated secular hospitals which engaged in substantially similar conduct more favorably.</u>

Defendants did not retaliate or act in a manner adverse to secular hospitals which refused to conduct medical procedures in furtherance of a police search. Such disparate treatment violates the Fourteenth Amendment Equal Protection Clause.

The Equal Protection Clause of the Fourteenth Amendment commands that "No state shall . . .deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. . . . threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (internal citations omitted).

Facial religious discrimination triggers strict scrutiny. "A government policy can survive strict scrutiny only if it advances interests of the highest order and is narrowly tailored to achieve those interests. Narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest. So long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Poffenbarger v. Kendall*, 588 F. Supp. 3d 770, 794 (S.D. Ohio 2022) (internal citations omitted).

Here, Defendant Kern and the Lorain Police Department expressly admit that secular hospitals were treated more favorably under similar circumstances, stating:

> it sounds like Lorain Police consider Mercy's actions refusing to comply with the court's orders as a form of obstructing official business under R.C. 2921.31. You should also know that they had similar problems with University Hospital in Elyria where they took a suspect for a blood draw last year – which is to say that the police are frustrated with hospitals refusing to comply with search warrants issued by judges. This situation from earlier this week does not exist in a vacuum in their mind.

*See* Exhibit "C." In Defendants' own words, both Mercy Health and University Hospitals refused to carry out a medical search to which each had ethical or moral objections. The only differences are twofold: (1) University Hospital did not assert sincerely held religious beliefs to form the basis of their objections; and (2) University Hospital is not a Catholic institution like Mercy Health.

Defendants' acts were not narrowly tailored to the least burdensome means of achieving the government interest with respect to Plaintiffs' First Amendment protections. Indeed, Plaintiffs proposed at least two readily available and less restrictive alternatives: (1) upholding Patient's right to life, sanctity of life, and basic human dignity by allowing the "baggy" to pass naturally under medical and police observation. Importantly, this natural passing would have more than likely occurred during the 72-hour search window prescribed by the search warrant; or (2) transfer Patient to a secular or government operated medical facility, of which there are many, to perform the procedure. Instead, the government released Patient within the search window, and subsequently prosecuted, persecuted, retaliated, and discriminated against the sincerely held Catholic beliefs of Mercy Health.

There is no explanation as to why Plaintiffs' proposed alternative could not just as effectively furthered Defendants' interest. Instead, Defendants' position is that they should be permitted to force hospitals and medical doctors to perform high risk procedures, which violate

their medical ethics, moral codes, and religious beliefs, to achieve the same results as less invasive and readily available alternatives.

Defendants did not retaliate or implement any adverse action against the secular University Hospital where "they had similar problems[.]" *Id.* The Defendants' conduct therefore disparately treats Mercy Health and infringes on their religious rights in a manner prohibited by the Equal Protection guarantees under the Fourteenth Amendment.

6.  Substantive due process

"[G]overnmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed . . . [under] substantive due process. One aspect of substantive due process is the right to be free of 'arbitrary and capricious' action by government actors." *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003) (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). "[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotations omitted).

The Sixth Circuit has not adopted a uniform approach for substantive due process claims. It "has said that this component of [Due Process] comes in two varieties: '(1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765 (6th Cir. 2020).

Defendants' actions shock the conscience in a constitutionally repugnant sense. "The principles enumerated in *Rochin v. California*, 342 U.S. 165 provide the 'benchmark' for what shocks the conscience." *Kerchen v. Univ. of Mich.*, 100 F.4th 751, 763-764 (6th Cir. 2024) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). "In *Rochin*, police pumped a suspect's

stomach to obtain pills as evidence for prosecution." *Id.* (citing *Rochin*, 342 U.S. at 166). "The

Supreme Court found that this behavior 'shock[ed] the conscience' because it was 'so brutal and

so offensive to human dignity' that it violated the 'decencies of civilized conduct,' and, thus,

violated the Constitution." *Id.* The standard "'sets a high bar' and only penalizes government

actions that offend 'traditional ideas of fair play and decency' such that they violate the

Constitution." *Id.* (citing *Range*, 763 F.3d at 589-90).

The facts of this case go beyond the conscience-shocking benchmark set forth in *Rochin*.

The medical doctors in this case all aver to the same opinion on this matter:

> 10. Manually entering the rectum for the purpose of performing a cavity search is
> a highly invasive approach that increases the risk of perforating the bowel.
>
> 11. Manually entering the rectum for a cavity search also increases the risk of
> perforating any bag containing drugs, which the Lorain Police Department believe
> to be concealed in [Patient's] rectum.
>
> 12. The interior walls of the anal cavity are highly absorptive. Should a bag
> containing an unknown quantity of an unknown drug indeed be concealed in
> [Patient's] rectum, **the perforation of that bag and subsequent release of the
> substance into [Patient's] body has a high likelihood of being fatal.** (emphasis
> added).
>
> 13. Based on my evaluation of the clinical facts, as well as my education, training
> and Experience in the field of medicine, and in accordance with accepted medical
> standards, I determined that a cavity search would be so highly dangerous and
> unnecessary as to rise to the level of medical battery.
>
> 14. It is my opinion that such a cavity search is unreasonable and the performance
> of such a search would be against my medical advice.
>
> 15. The performance of such an invasive cavity search is contrary to my personal
> medical ethics and would subject not only the patient, but also myself and my
> medical license to irreparable harm.

(Affidavit of Gil Palmer, M.D), attached hereto as Exhibit "E." The potentially fatal and highly

invasive nature of the "search" is echoed by multiple medical doctors; if Plaintiffs performed the

search, Patient had an unjustifiable risk of death. This risk was unnecessary under Plaintiffs'

alternative proposal to allow Patient to pass the substance naturally. Importantly, Defendants have never produced or alluded to a single medical professional who opined the search could have been conducted safely.

Forcing medical doctors to commit potentially fatal medical battery shocks the conscience, violates traditional notions of fair play, is arbitrary and capricious, and serves no government interest that could not have been achieved using less invasive means. It violates the right of life, basic human dignity, and protections guaranteed to persons to be free from committing egregious acts against other persons against their beliefs. *See Rochin*, 342 U.S. at 166. Moreover, stripping the doctors and health care institutions of benefits including a police force for their refusal to engage in such constitutionally repugnant conduct is in and of itself conscience shocking.

7. Procedural Due Process

"To establish a procedural due process violation under 42 U.S.C. § 1983, a plaintiff must demonstrate three elements: (1) it had a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment; (2) it was deprived of protected interest within the meaning of the due process clause; and (3) the state did not afford it adequate procedural rights before depriving it of its protected interest." *Rescue Mental Health & Addiction Servs.*, 2023 U.S. Dist. LEXIS 21667 at *11 (N.D. Ohio) (citing *Wedgewood L.P. I v. Twp. of Liberty*, 610 F.3d 340, 350 (6th Cir. 2010)).

"A liberty interest may be created by state law when a state places substantive limitations on official discretion." *Jasinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (internal marks omitted). "The essential requirements of due process . . . are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be

taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

Ohio's general assembly created a liberty interest for medical professionals and institutions which provides total immunity from civil, criminal, administrative liability, **or any other adverse action**, resulting from refusal to perform any procedure which violates their right of conscience:

> (D) A medical practitioner, health care institution, or health care payer shall not be civilly, criminally, or administratively liable for exercising the practitioner's, institution's, or payer's right of conscience by declining to participate in or pay for a particular health care service.

> A health care institution shall not be civilly, criminally, or administratively liable for the exercise of conscience rights not to participate in a particular health care service by a medical practitioner who is employed by, under contract with, or granted admitting privileges by the health care institution.

> **A medical practitioner, health care institution, or health care payer shall not be discriminated against or suffer any other adverse action as a result of declining to participate in or pay for a particular health care service on the basis of conscience.**

Ohio Rev. Code § 4743.10(D).

Here, without notice, hearing, or ability to respond, Defendants violated Plaintiffs' liberty interest to be free from adverse action related to their right of conscience in refusal to conduct a potentially fatal medical battery. Specifically, termination of Mercy Health – Lorain Hospital's Police Force as a result of asserting rights under Ohio Rev. Code § 4743.10(D) is "any . . . adverse action" as contemplated by the statute.

Because the Ohio General Assembly granted protections and immunity from adverse action, Defendants' acts in this case impermissibly deprive Plaintiffs of that conferred right without any procedural rights. *See Rescue Mental Health & Addiction Servs.*, 2023 U.S. Dist. LEXIS 21667 at *24 ("To satisfy the due process clause, the deprivation of a protected interest must be preceded by notice and opportunity for hearing appropriate to the nature of the case.").

Plaintiffs are therefore likely to prevail on a procedural due process claim.

    8.  <u>Ohio Rev. Code § 4743.10</u>

Similarly, Plaintiffs are likely to prevail under Ohio Rev. Code § 4743.10(D) which provides total statutory immunity for medical providers and institutions for asserting objections of conscience against performing medical procedures.

The protections for Ohio's medical practitioners on this basis could not be clearer:

> (D) A medical practitioner, health care institution, or health care payer shall not be civilly, criminally, or administratively liable for exercising the practitioner's, institution's, or payer's right of conscience by declining to participate in or pay for a particular health care service.
>
> A health care institution shall not be civilly, criminally, or administratively liable for the exercise of conscience rights not to participate in a particular health care service by a medical practitioner who is employed by, under contract with, or granted admitting privileges by the health care institution.
>
> **A medical practitioner, health care institution, or health care payer shall not be discriminated against or suffer any other adverse action as a result of declining to participate in or pay for a particular health care service on the basis of conscience.**

Ohio Rev. Code § 4743.10(D) (emphasis added).

Under R.C. 4743.10,

> (1) "Health care service" means medical care provided to any patient at any time over the entire course of the patient's treatment and may include one or more of the following: testing; diagnosis; referral; dispensing or administering a drug, medication, or device; psychological therapy or counseling; research; prognosis; therapy; record making procedures and notes related to treatment; preparation for or performance of a surgery or procedure; **or any other care or services performed or provided by any medical practitioner.**

*Id.* at (A)(1) (emphasis added). Further, Ohio Rev. Code § 2933.32 expressly states a body cavity search is a service performed by a medical practitioner, stating: "a body cavity search shall be conducted under sanitary conditions and only by a physician, or a registered nurse or licensed practical nurse, who is registered or licensed to practice in this state."

Because the search is provided by a medical practitioner, it is a health care service under Ohio Rev. Code § 4743.10. Thus, Plaintiffs have an unequivocal right to decline to participate in that medical act. That right to decline to participate is shrouded in immunity from "civil[ ], criminal[ ], or administrative[] liab[ility] for exercising the practitioner's, institution's, or payer's right of conscience[.]" *Id.* And importantly, the right of conscience is protected "against discriminat[ion] against or suffer[ing] any other adverse action[.]" *Id.*

Here, all of the providers, and representatives of Mercy Health as an institution, have averred, *inter alia*:

> 12.    The interior walls of the anal cavity are highly absorptive. Should a bag containing an unknown quantity of an unknown drug indeed be concealed in [Patient's] rectum, the perforation of that bag and subsequent release of the substance into [Patient's] body has a high likelihood of being fatal.

> 13.    Based on my evaluation of [Patient], as well as my education, training and experience in the field of medicine, and in accordance with accepted medical standards, I determined that a cavity search would be so highly dangerous and unnecessary as to rise to the level of medical battery.

> 14.    It is my opinion that such a cavity search is unreasonable and the performance of such a search would be against my medical advice.

> 15.    The performance of such an invasive cavity of search is contrary to my personal medical ethics and would subject not only the patient, but also myself and my medical license to irreparable harm.

*See, e.g.,* Palmer Affidavit, at ¶¶ 12-15. With these averments, Plaintiffs are immune from any discriminatory or otherwise adverse action. *Bontell v. OhioHealth Corp.*, 2021 Ohio Misc. LEXIS 1544, at *8-9 (Franklin C.P.) (court found a physician had immunity under R.C. § 4743.10, holding "this Court is not empowered to order the relief that Plaintiff seeks, in supplantation of Defendant's exercise of its professional judgment and contrary to Defendant's professional ethics.").

Defendants were entirely aware of Plaintiffs' position that they would not conduct medical procedures which violated their "right of conscience." The right to decline enjoys immunity in no

uncertain terms. Defendants' termination of the Mercy Health – Lorain Hospital's Police Force resulting from Plaintiffs' right of conscience is an act of abuse; an abuse of power, an abuse of authority, and an abuse of process designed to strong arm medical care providers to act as instruments of law enforcement against their medical code of ethics.

As such, Plaintiffs are likely to prevail on their statutory claims against Defendants with respect to the revocation of the Mercy Health – Lorain Hospital Police Force.

9. <u>Ohio Rev. Code § 2933.32 provides total immunity from all adverse actions against medical providers and institutions for refusing to perform medical procedures</u>

Defendants are not permitted to compel Plaintiffs to set aside medical judgment when performing medical searches pursuant to Ohio statute.

Under Ohio Rev. Code § 2933.32,

"Body cavity search" means an inspection of the anal or vaginal cavity of a person that is conducted visually, manually, by means of any instrument, apparatus, or object, or in any other manner while the person is detained or arrested for the alleged commission of a misdemeanor or traffic offense.

And, under subsection (B)(2),

(2) A body cavity search or strip search may be conducted if a law enforcement officer or employee of a law enforcement agency has probable cause to believe that the person is concealing evidence of the commission of a criminal offense, including fruits or tools of a crime, contraband, or a deadly weapon, as defined in section 2923.11 of the Revised Code, *that could not otherwise be discovered.*

(Emphasis added.) (*Id.*). Ohio Rev. Code § 2933.32 specifically dictates the body cavity search should not be conducted if the suspected evidence could otherwise be retrieved. *Id.*

The search warrant ordered a search under Ohio Rev. Code § 2933.32 to occur within 3 days, which was August 15, 2024. Multiple medical doctors uniformly concluded that a manual cavity search of Patient's rectum carried a high risk of either (1) perforated bowels; or (2)

perforation of the baggy which would release the contents into Patient's rectum. Under the latter circumstance, there was a high likelihood of death to Patient.

Therefore, as permitted under Ohio Rev. Code § 2933.32, Plaintiffs performed a CT scan with the consent of Patient to determine whether a foreign object was in their rectum. When the scan was inconclusive, Plaintiffs recommended the least invasive approach be pursued: allow the foreign object to pass naturally through a bowel movement over the next several days. That conduct is a mandatory course of action under section 2933.32. Defendants promoted narrow reading of the statute to mean a practitioner must immediately conduct the portion of the body cavity search that focuses on the manual removal of a purported foreign object, would render the statutory language meaningless. *State ex rel. Allen Cty. Children Servs. Bd. v. Mercer Cty. Court of Common Pleas*, 81 N.E.3d 380, ¶ 74 ("a construction that renders statutory words meaningless and without effect is an improper analysis.").

Instead, the statute allows medical professionals to exercise medical judgment. This result makes sense; the reason medical professionals are required to perform a body cavity search is so the search can be conducted in a medically safe manner. Otherwise, the statute would not mandate their medical expertise. Thus, medical judgment, medical standard of care, and ethics governing medical professionals are necessarily read into the statute. Indeed, the Ohio Supreme Court has imposed a standard of care for physicians, stating, "[t]he standard of care is to do those things which a reasonably careful physician would do and to refrain from doing those things which a reasonably careful physician would not do. The required standard of care is the same throughout the United States." *Baker v. DeRiso*, 2015-Ohio-2440, ¶ 11 (Ohio Ct. App.), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127, 346 N.E.2d 673 (1976), paragraphs one and two of the syllabus. If it did not want searches under section 2933.32 to be conducted in accordance with the laws

governing medical doctors, i.e. within the standard of care, the Ohio General Assembly would not have mandated medical providers to conduct the searches.

Therefore, Plaintiffs are likely to prevail on a statutory claim seeking declaratory judgment that Ohio Rev. Code § 2933.32 incorporates the medical standard of care, medical judgment, and medical ethics when performing a body cavity search.

**B.** **Plaintiffs can satisfy the remaining factors to warrant injunctive relief.**

Sixth Circuit precedent dictates that "[a]ctions for injunctions in constitutional cases often turn on the likelihood of success on the merits, making it unnecessary to dwell on the remaining three factors ---- irreparable harm, balance of harms and public interest." *Grantonz v. Earley*, 2021 U.S. Dist. LEXIS 236429, *11 (N.D. Ohio). Thus, while satisfying the remaining factors for injunctive relief is likely unnecessary, Plaintiffs can nonetheless support each factor.

1. <u>Plaintiffs will suffer irreparable harm.</u>

Plaintiffs will suffer irreparable harm if Defendants are not enjoined from terminating the Mercy Health – Lorain Hospital Police Force prior to January 1, 2025.

*First*, the merits of the constitutional claims *supra* each satisfy the irreparable harm factor under Supreme Court precedent. The Supreme Court has "unequivocally admonished that even minimal infringement upon first amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). "The loss of first amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion of Brennan, J.).

Furthermore, an individual who has been subjected to direct and intentional retaliation for having exercised his protected constitutional right of expression continues to suffer irreparable injury even after termination of some tangible benefit. *Newsom*, 888 F.2d at 378. *See Johnson v.*

*Bergland*, 586 F.2d 993 (4th Cir. 1978) ("[v]iolations of first amendment rights constitute per se irreparable injury."). One reason for such stringent protection of First Amendment rights is the intangible nature of the benefits flowing from the exercise of those rights, and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future. *Wesselman v. Ashley*, 1990 U.S. App. LEXIS 5378, *3-4 (6th Cir. 1990).

Defendants' violations of Plaintiffs' Free Exercise rights, right to be free from First Amendment retaliation, disparate treatment and Equal Protection violations, and due process violations are each independently sufficient to show irreparable harm to warrant injunctive relief.

*Second*, Mercy Health – Lorain Hospital Police Department currently staffs nine police officers, a Chief of Police, and an emergency manager. The Mercy Health Police Department also includes 2 full-time security officers and 4 PRN ("as needed") security officers. The Mercy Health – Lorain Hospital Police Department is essential to the function of hospitals like Mercy Health - Lorain Hospital. The announcement by Chief James McCann has thrust the safety and operation of the hospital into uncertainty because all nine members of the police force will likely seek out alternative employment as commissioned police officers once their commission at Mercy Health - Lorain Hospital is stripped on January 1, 2025. Further, Mercy Health is not able to secure an adequate alternative in the time allotted to satisfy the security needs of the hospital. Such security deficiency puts the hospital's ability to operate in jeopardy.

2.    Third parties will be harmed if the police force is eliminated.

The harm to third parties is self-evident. *First*, the nine police officers currently commissioned as Mercy Health – Lorain Hospital Police Officers will lose their commission as police officers unless they seek new employment.

*Second*, Mercy Health — Lorain Hospital is a large, 338-bed hospital. Ohio statute provides hospitals the ability to maintain a police force due to the need of police presence in such settings. Leaving the hospital completely without its own police protection puts patients and visitors at risk, in addition to the staff and providers who work there. Lack of sufficient police protection puts each person at the hospital at risk.

*Third*, as stated by Defendant Kern, other health systems in the community are looking at this litigation. Defendants' conduct in this matter sends a message to those medical providers as well. Their right to exercise medical judgment, ethics, morality, and constitutional liberties, are significantly chilled in the constitutional sense if Defendants are permitted to proceed under their planned course of retaliatory conduct.

        3.     <u>Injunctive relief serves public policy interest.</u>

*First*, the Ohio General Assembly codified its public policy interest in allowing medical providers and institutions to refuse to perform any medical procedures which violate their right of conscience. That protection extends total immunity from civil, criminal, administrative, or other discrimination or adverse action for asserting such rights of conscience. Ohio Rev. Code § 4743.10(D).

*Second*, violations of constitutional rights are *per se* against the public interest. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) ("it is always in the public interest to prevent the violation of a party's constitutional rights."); *see also Dayton Area*, 70 F.3d at 1490 ("the public as a whole has a significant interest in . . . protection of First Amendment liberties").

*Third*, and at the core of this case, the search warrant which Defendants contend "compelled" Plaintiffs to commit medical battery was not made with the insight of any medical professional. It is in the public interest to give deference to medical doctors on issues of medicine.

If a court can, without any hearing or input from medical professionals, compel dangerous medical intervention, societal interests are threatened. Again — all medical professionals who have opined on this case have uniformly determined the acts the Defendants seek to compel would have constituted medical battery in a potentially fatal manner. To allow such uninformed government compulsion does not serve the public interest.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs, Mercy Health – Regional Medical Center d/b/a Mercy Health – Lorain Hospital, Mercy Health Lorain, LLC, Gil Palmer, M.D., and Alok Jain, M.D., respectfully request this Court enter a temporary restraining order/preliminary injunction prohibiting Defendants from terminating the Mercy Health – Lorain Hospital Police Force. (Verified Complaint, attached hereto as Exhibit "F").

Respectfully submitted,

*/s/ Erin Siebenhar Hess*
Erin Siebenhar Hess (0074007)
Brian D. Sullivan (0063536)
Taylor C. Knight (0089531)
Jorden R. Messmer (0102652)
REMINGER CO., L.P.A.
200 Public Square, Suite 1200
Cleveland, Ohio 44114
P: (216) 687-1311 F :( 216) 687-1841
Email:  ehess@reminger.com
          tknight@reminger.com
          jmessmer@reminger.com

*Counsel for Plaintiffs*